The Honorable Ricardo S. Martinez

1
2
3
4
5
6
7      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   ANGELA HOGAN and ANDREA SEBERSON,        No. 2:21-cv-00996 RSM
    on behalf of themselves and others similarly
10  situated,

11                      Plaintiff,            **DEFENDANT AMAZON.COM,
                                              INC.'S MOTION TO DISMISS**
12          v.
                                              **ORAL ARGUMENT REQUESTED**
13  AMAZON.COM, Inc.,
                                              NOTE ON MOTION CALENDAR:
14                      Defendant.            June 24, 2022

15
16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM)

1

## TABLE OF CONTENTS

2
**Page**

3
INTRODUCTION ........................................................................................................... 1

4
BACKGROUND ............................................................................................................. 3

5
I.      Development of the Featured Offer ..................................................................... 3

6
II.     Fulfillment by Amazon ....................................................................................... 4

7
III.    The Amended Complaint ..................................................................................... 4

8
ARGUMENT .................................................................................................................. 6

9
I.      Plaintiffs lack antitrust standing ......................................................................... 6

10

11
        A.      Plaintiffs fail to allege antitrust injury because they are not purchasers in
                the market in which competition allegedly was restrained. .................. 7

12
        B.      Plaintiffs are at best indirect purchasers. .............................................. 9

13
        C.      Plaintiffs' alleged injuries are at best remote and speculative. ........... 10

14

15
        D.      Plaintiffs' claims risk duplicative recovery and complexity in apportioning
                damages ................................................................................................ 11

16
II.     Plaintiffs fail to plead a Section 1 tying claim. ................................................. 13

17
        A.      Plaintiffs do not identify separate, tied products. ............................... 13

18
                1.      The "Buy Box" is not a product ................................................. 13

19

20
                2.      An alleged relationship between the Featured Offer and FBA is not
                        a legally cognizable tie ............................................................... 15

21
        B.      Plaintiffs allege neither market power in the tying product market nor that
                any purchaser was "coerced" into purchasing the tied product. ......... 16

22

23
        C.      Plaintiffs fail to show sufficient anticompetitive effects in the tied product
                market. ................................................................................................. 18

24
III.    Plaintiffs fail to plead a monopolization claim under Section 2 ........................ 19

25
        A.      Plaintiffs do not allege actionable anticompetitive conduct. ............... 19

26
        B.      Plaintiffs fail to allege monopoly power in the relevant market ......... 20

27

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

IV.     Most of Plaintiffs' claims are time-barred. ....................................................21

        A.      Plaintiffs' claims accrued when their alleged injuries occurred, not when
                they allegedly "discovered" their claims. .........................................21

        B.      Plaintiffs fail to plead any of the necessary elements for fraudulent
                concealment tolling...........................................................................22

CONCLUSION.....................................................................................................23

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Federal Cases**                                                           **Page(s)**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) .......................................................................13, 18

*AFMS, LLC v. United Parcel Serv. Co.*,
   2011 WL 13128436 (C.D. Cal. Nov. 23, 2011).............................................19

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
   948 F.2d 536 (9th Cir. 1991) .......................................................................19, 20

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) .......................................................................15

*Andrx Pharms. v. Biovail Corp. Int'l*,
   256 F.3d 799 (D.C. Cir. 2001) .....................................................................11

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019)...................................................................................9

*Apple iPod iTunes Antitrust Litig.* ("*Apple I*"),
   2009 WL 10678931 (N.D. Cal. May 15, 2009) ...........................................16

*Apple iPod iTunes Antitrust Litig.* ("*Apple II*"),
   2009 WL 10678940 (N.D. Cal. Oct. 30, 2009)............................................16

*Apple, Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ......................................................17

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters* ("*AGC*"),
   459 U.S. 519 (1983)........................................................................6, 7, 11, 12

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   9 F.4th 1102 (9th Cir. 2021) ........................................................................13

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) .....................................................................13, 18

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*,
   613 F.2d 727 (9th Cir. 1979) .......................................................................19

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986).......................................................................................7

*Cherrone v. Florsheim Dev.*,
   2012 WL 6049021 (E.D. Cal. Dec. 5, 2012) ...............................................18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*City of Oakland v. Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) .................................................................6, 7, 10, 11

*Coronavirus Rep. v. Apple Inc.*,
    2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ..............................................14, 16

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
    99 F.3d 937 (9th Cir. 1996) ........................................................................20

*Dimartino v. BMW of N. Am., LLC*,
    2016 WL 4260788 (D.N.J. Aug. 11, 2016) ...................................................11

*Eagle v. Star-Kist Foods, Inc.*,
    812 F.2d 538 (9th Cir. 1987) ........................................................................12

*Eastman Kodak v. Image Technical Services, Inc.*,
    504 U.S. 451 (1992) ........................................................................20

*Epic Games, Inc. v. Apple, Inc.*,
    2021 WL 4128925 (N.D. Cal. Sept. 10, 2021) ..............................................14, 16

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) ........................................................................15, 20

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ....................................................7, 8, 13, 15, 19, 20

*Gerlinger v. Amazon.com Inc.*,
    526 F.3d 1253 (9th Cir. 2008) ........................................................................6

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ........................................................................21, 22

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ........................................................................17

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) ........................................................................13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ........................................................................6, 9

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ........................................................................19, 20

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ........................................................................22

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) .................................................................................10, 11

*In re Animation Workers Antitrust Litig.*,
   87 F. Supp. 3d 1195 (N.D. Cal. 2015) ........................................................................21

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) ...................................................................................9, 10

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   313 F. Supp. 3d 931 (N.D. Ill. 2018) ..........................................................................11

*In re Google Digit. Advert. Antitrust Litig.*,
   2021 WL 2021990 (N.D. Cal. May 13, 2021) .............................................................17

*It's My Party, Inc. v. Live Nation, Inc.*,
   811 F.3d 676 (4th Cir. 2016) .......................................................................................16

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
   466 U.S. 2 (1984)....................................................................................................13, 18

*John Doe I v. Abbott Laboratories*,
   571 F.3d 930 (9th Cir. 2009) .......................................................................................20

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)......................................................................................................21

*Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*,
   763 F.3d 1280 (11th Cir. 2014) .....................................................................................8

*Lucas v. Bechtel Corp.*,
   800 F.2d 839 (9th Cir. 1986) .......................................................................................10

*N. Pac. Ry. Co. v. United States*,
   356 U.S. 1 (1958)..........................................................................................................13

*Paladin Assocs. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) .....................................................................................17

*PBTM LLC v. Football Nw., LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021) (Martinez, J.) ..............................................8

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997)..........................................................................................17

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .......................................................................................20

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Redd v. Shell Oil Co.*,
  524 F.2d 1054 (10th Cir. 1975) ................................................................. 13

*Refrigeration Eng'g Corp. v. Frick Co.*,
  370 F. Supp. 702 (W.D. Tex. 1974) ........................................................... 13

*Reilly v. Apple Inc.*,
  2022 WL 74162 (N.D. Cal. Jan. 7, 2022) ................................................... 17

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) ........................................................ 23

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
  2022 WL 595696 (9th Cir. Feb. 28, 2022) ................................................. 23

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
  532 F.3d 963 (9th Cir. 2008) ........................................................... 8, 13, 19

*Salveson v. JP Morgan Chase & Co.*,
  166 F. Supp. 3d 242 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016) ...................... 12

*Serv. & Training, Inc. v. Data Gen. Corp.*,
  737 F. Supp. 334 (D. Md. 1990), *aff'd*, 963 F.2d 680 (4th Cir. 1992) .................................... 14

*Siva v. Am. Bd. of Radiology*,
  512 F. Supp. 3d 864 (N.D. Ill. 2021) ......................................................... 13

*Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*,
  131 F.3d 874 (10th Cir. 1997) ..................................................................... 8

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) ..................................................................................... 18

*Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*,
  123 F. Supp. 3d 1219 (C.D. Cal. 2015) ...................................................... 12

*Times-Picayune Pub. Co. v. United States*,
  345 U.S. 594 (1953) ................................................................................... 8

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ................................................................................. 19

*United States v. Microsoft Corp.*,
  147 F.3d 935 (D.C. Cir. 1998) .................................................................. 15

*Universal Grading Serv. v. eBay, Inc.*,
  2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ................................................... 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004).................................................................................................................19

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011).........................................................................................................8


**Other Authorities**                                                                                              **Page(s)**

15 U.S.C. § 15(a) ......................................................................................................................21

15 U.S.C. § 15b ........................................................................................................................21

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1757a (5th ed. 2021) .........................15

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 776 (5th ed. 2021) .............................20

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - vii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

Plaintiffs have not stated—and cannot assert—viable antitrust claims. As purchasers of goods on Amazon.com, Plaintiffs lack antitrust standing to raise claims about shipping and related fulfillment services sold to an entirely different group of purchasers: third-party businesses who sell in Amazon's store. And even if Plaintiffs had standing, they fail to plead the basic elements of their claims. For their Sherman Act Section 1 tying claim, Plaintiffs do not allege a product that is even available for purchase, let alone plausible product markets or an actual "tie"; for their Section 2 monopolization claim, Plaintiffs fail to allege anticompetitive conduct or monopoly power.

Plaintiffs' failure to plead a plausible antitrust case has a straightforward explanation: Amazon's fulfillment services both result from, and foster, robust competition. Amazon competes with innumerable brick-and-mortar stores (e.g., Costco, Target), single-seller websites (e.g., Sony.com, Gap.com), and other online marketplaces where sellers offer their goods for sale (e.g., eBay, Walmart, Wayfair). To better compete in this crowded field—and in particular, to compete with brick-and-mortar retailers that offer customers the convenience of instantly receiving their purchases—Amazon made risky and significant investments to build a world-class logistics network, bringing to its customers faster and more reliable delivery of goods. Then, instead of keeping that network to itself, Amazon made it available to third-party sellers—on a purely optional basis—through a program called Fulfillment by Amazon (or FBA). FBA allows sellers to focus on other aspects of their business and offers consumers the benefit of fast, free, and reliable shipping, as well as easier returns and superior customer service.

As a result of Amazon's efforts, the retail industry is more competitive, logistics services have improved, and customers are better off. Yet Plaintiffs now seek to undermine those efforts—the very essence of competition—through a conclusory Amended Complaint that suffers from myriad fatal legal defects. Even accepting Plaintiffs' well-pled allegations as true for purposes of this Motion, the Court should dismiss the Amended Complaint for the following reasons.

*First*, Plaintiffs are end consumers who lack antitrust standing to bring these claims. Although they allege Amazon "tied" placement in the Featured Offer (which Plaintiffs call the

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS (2:21-cv-00996 RSM) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"Buy Box") to a seller's purchase of FBA, **Plaintiffs** did not purchase either of these services. The Featured Offer is not a product at all; it is simply Amazon's judgment about which goods consumers are most likely to want to purchase. The Featured Offer designation is not for sale. And FBA is a service offering purchased only by third-party sellers, not end consumers like Plaintiffs. Under well-established case law, only those who make purchases (or compete as sellers) in the affected market—here, the alleged market for logistics and fulfillment services—can state an antitrust claim. Plaintiffs cannot meet this standard, and instead assert injuries that are at best indirect, remote, speculative, and dependent on whether sellers passed on certain costs to consumers. These are fatal defects under the Supreme Court's antitrust standing doctrine.

*Second*, Plaintiffs allege none of the elements required for a tying claim under Section 1 of the Sherman Act. Tying occurs when a business has market power as to one product (the "tying product") and uses that power to coerce purchases of a second product (the "tied product"). But Plaintiffs fail to allege a tying product at all: The Featured Offer is not something that can be purchased by anyone—not sellers, and certainly not customers such as Plaintiffs. Plaintiffs also fail to allege a cognizable antitrust market in which the "Buy Box" competes—and indeed could not allege one, since the "Buy Box" is not a product—let alone establish that Amazon has market power in that market. Finally, there is no "tie," as Plaintiffs acknowledge that sellers are not required to use FBA. Plaintiffs' conclusory assertion that Amazon's algorithms favor sellers using FBA is at best an allegation of a "technological tie," but the Ninth Circuit (and others) have clearly held that technological ties are not "contracts" or "conspiracies" prohibited by Section 1.

*Third*, Plaintiffs fail to allege either of the elements necessary for a monopolization claim under Section 2 of the Sherman Act: (1) exclusionary or anticompetitive conduct and (2) monopoly power in a properly defined relevant market. The only purportedly anticompetitive conduct Plaintiffs identify is "monopoly leveraging," which the Ninth Circuit unambiguously has held cannot support a Section 2 claim as a matter of law. And Plaintiffs provide no facts or details about the market Amazon supposedly monopolized—the asserted "logistics and fulfillment market."

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Crucially, Plaintiffs assert that Amazon possesses a mere 20% share of that market, which is inadequate to allege monopoly power.

**Finally**, although Plaintiffs half-heartedly attempt to assert claims dating back to 2013, most of these claims are untimely under the applicable four-year statute of limitations. No discovery tolling rule applies, and Plaintiffs' effort to claim fraudulent concealment falls far short of what the law requires.

Plaintiffs' Amended Complaint suffers from numerous, incurable defects. The Court should dismiss it with prejudice.

## BACKGROUND

### I.   Development of the Featured Offer

Amazon operates an online store in which it and other third-parties sell goods directly to consumers. (¶ 1).[1] Plaintiffs allege that more than 2.3 million sellers offer products in Amazon's store, most of whom are small- and medium-sized businesses. (¶¶ 17, 59, 73). Amazon has invested significantly in tools and services designed to assist these sellers. (¶¶ 73–74). By inviting millions of sellers into its store, Amazon has increased competition and driven innovation, with sellers now accounting for more than half of Amazon.com sales. (¶¶ 13, 34). Amazon's store offers consumers an unparalleled range of goods and choices at highly competitive prices. (¶¶ 9, 11, 170).

The retail industry in which Amazon operates is itself intensely competitive. Amazon competes with myriad brick-and-mortar stores (such as Costco, Target, Home Depot, and Macy's), single-seller websites (such as Sony.com, Bestbuy.com, and Gap.com), and other online stores and marketplaces on which multiple sellers offer their goods for sale (such as eBay, Walmart, Wayfair, Etsy, QVC, HSN, and Zulily). Similarly, when selling its own "first-party" products, Amazon competes with the more than 2.3 million sellers who offer products in Amazon's store as well as on their own websites and on competing online stores and marketplaces. (¶ 17).

---

[1] Paragraph citations ("¶") are to the Amended Complaint, Dkt. No. 23, unless otherwise indicated. Amazon recites Plaintiffs' allegations as necessary background for this motion, but does not accept their accuracy. To the extent the Background includes facts not included in the Amended Complaint, this brief does not rely upon those facts; Amazon includes them only to provide a more complete background for the Court.

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

A single product in Amazon's store is frequently sold by a number of different sellers, often with different terms (e.g., different prices or shipping speeds). (¶ 59). Amazon developed the Featured Offer to enhance the convenience of the shopping experience by featuring the offer that customers would likely select if they were to compare all available offers for the same product. (¶¶ 59–60, 67, 139). Although Amazon selects the Featured Offer, no customer is required to purchase it, and all offers not selected as the Featured Offer remain available for customers to purchase. (¶¶ 60, 62). Amazon developed and continuously refines the Featured Offer to better help customers make purchases that leave them satisfied, which in turn increases the likelihood they will return to Amazon. (¶¶ 57, 170).

## II.    Fulfillment by Amazon

Amazon developed Fulfillment by Amazon ("FBA") in 2006 to make it easier for third-party sellers to sell on Amazon while being competitive with online or brick-and-mortar alternatives. (¶¶ 13, 186). FBA gives small businesses and other sellers the option to access Amazon's own logistics network for a broad range of services such as warehousing, packing, shipping, and customer service. (¶¶ 13, 67). Not only does available data confirm that FBA is more efficient than other fulfillment services as measured by average shipping speeds and reliability, but FBA also allows customers to take advantage of easier returns, quicker refunds, and Amazon's world-leading customer service. Critically, however, sellers are free to choose any fulfillment service they wish (not only FBA) (¶¶ 28, 36), and customers are free to purchase items from any seller they wish (not only the seller that wins the Featured Offer) (¶¶ 7–8).

## III.    The Amended Complaint

Plaintiffs filed their Consolidated Amended Class Action Complaint on February 2, 2022, suing on behalf of a putative class of consumers who purchased goods on Amazon.com through the "Buy Box" that were packed and shipped using FBA, no matter whether they purchased apparel, or electronics, or furniture, or any other of the many goods available on Amazon.com. (¶ 151). Plaintiffs premise their claims entirely on the operation of the algorithm that selects the Featured Offer and the assertion that Amazon purportedly conditions Featured Offer selection (or,

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 4

as Plaintiffs refer to it, "Buy Box" placement) on a seller's use of FBA. (¶¶ 16, 78, 174, 184). This, Plaintiffs claim, forces **sellers** (not Plaintiffs) to use FBA even when other fulfillment services might be less expensive (¶¶ 80, 91–92, 189), resulting in an alleged increase in Amazon's market share in a purported fulfillment and logistics market in which **Plaintiffs themselves do not make purchases**. (¶¶ 42–43).

Given that Plaintiffs are not competitors in either the e-commerce business in which they claim Amazon possesses market power or the fulfillment and logistics business they claim Amazon is "monopolizing," any supposed harm to Plaintiffs would have to be passed through to them by sellers. (*See* ¶ 115). Plaintiffs claim they were overcharged for goods they purchased on Amazon's online store because **sellers** paid too much for fulfillment and logistics services as a result of Amazon's purported "tie" or "monopoly leveraging," and then supposedly passed on those overcharges to customers like themselves. (*E.g.*, ¶¶ 129–136).

Plaintiffs seek to assert a "tying" claim under Section 1 of the Sherman Act. (¶¶ 173–182). But by their own account, the harm they assert results not from a contractual tie, but the manner in which Amazon supposedly designed its algorithm. (*E.g.*, ¶ 22). The so-called "tying product," the Featured Offer or "Buy Box" (¶ 175), is no product at all: It is not available for purchase or sale. Nor do Plaintiffs properly define an antitrust market in which the Featured Offer supposedly competes. Their attempt to describe such a market—"favorable product placement on Amazon's website, and on the internet more broadly" (¶ 175(i))—does not provide even the rough contours of an antitrust market; nor does it provide any notice as to which products it includes and excludes.

Plaintiffs also recast their Section 1 claim as a Section 2 "monopoly leverag[ing]" claim. (¶¶ 183–194). The Section 2 claim suffers from many of the same defects as the Section 1 theory, plus a host of new ones. Plaintiffs fail to allege monopoly power or a danger of monopolization **in the relevant market**, as required for their Section 2 claim. They spill much ink about Amazon's supposed monopoly power in the alleged "e-commerce market," (*e.g.*, ¶ 185), but the relevant market here is the one they claim Amazon is monopolizing—the fulfillment and logistics market (¶ 188)—where Plaintiffs concede Amazon possesses a mere 20% share. (¶ 193).

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# ARGUMENT

## I.    Plaintiffs lack antitrust standing.

The Court should dismiss the Amended Complaint because Plaintiffs lack antitrust standing. To have antitrust standing, Plaintiffs must allege facts constituting "antitrust injury," but they cannot do so. Plaintiffs claim their alleged injury—overpaying for goods purchased on Amazon.com (¶¶ 182, 194)—stemmed from restrained competition in the separately alleged market for fulfillment and logistics services (¶¶ 177–178). This disconnect between the alleged anticompetitive conduct and Plaintiffs' claimed injury is fatal, as is the indirect, remote, and speculative nature of Plaintiffs' alleged harm.

"Antitrust standing is distinct from Article III standing." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008).[2] A plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action. *See, e.g., City of Oakland v. Oakland Raiders*, 20 F.4th 441, 452–53, 455 (9th Cir. 2021) (finding Article III standing but not antitrust standing). In *Associated General Contractors of California v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), the Supreme Court identified the factors a court must consider to determine whether plaintiffs have standing to bring an antitrust claim: (1) whether the plaintiffs suffered "antitrust injury," i.e., the type of injury the antitrust laws were intended to prevent; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *City of Oakland*, 20 F.4th at 455 & n.10. Further, the Supreme Court has adopted a freestanding bright-line rule that indirect purchasers may not bring private antitrust damage claims. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 723–26, 745–47 (1977). Plaintiffs lack standing under both *AGC* and *Illinois Brick*.

---

[2] Unless otherwise indicated, when language quoted from a decision contains material quoted from another source, all brackets, ellipses, footnote call numbers, internal quotation marks and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**A.** **Plaintiffs fail to allege antitrust injury because they are not purchasers in the market in which competition allegedly was restrained.**

The first *AGC* factor, antitrust injury, is "mandatory," meaning that the Court should dismiss Plaintiffs' antitrust claims for failing to allege antitrust injury even if the other factors were to favor the Plaintiffs. *City of Oakland*, 20 F.4th at 456. A "showing of antitrust injury is necessary, but not always sufficient, to establish standing." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986).

Antitrust injury requires "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland*, 20 F.4th at 456. In addition, and critically for these purposes, plaintiffs must have suffered their injury "in the market where competition is allegedly being restrained. ***Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.***" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). Limitations on antitrust standing are essential because, as the Supreme Court has explained, "[a]n antitrust violation may be expected to cause ripples of harm to flow through the Nation's economy." *AGC*, 459 U.S. at 534. Evaluating each more-distant ripple as potential antitrust injury could multiply the treble damages already authorized by the Sherman Act into sextuple or nonuple damages; and it would transform Sherman Act cases "into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge—from direct purchasers to middlemen to ultimate consumers." *Id.* at 544.

Plaintiffs assert anticompetitive harm in the market for fulfillment or logistics services under a Section 1 tying claim. The Amended Complaint describes the tying product as "placement in the Buy Box" (Featured Offer), the tied product as "Fulfillment by Amazon," and the alleged market in which the tied product competes as the "market for logistics for retail goods in the United States—namely, the warehousing, packing, and shipping of retail goods." (¶ 175). Because any

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

anticompetitive effects from a tying arrangement would occur in the tied product market,[3] a plaintiff must be a purchaser (or competitor) **in that market** to challenge the arrangement. Thus, in evaluating antitrust standing in a lawsuit brought by purchasers, "[t]he key question in an illegal tying claim is whether the plaintiff purchased the **tied** product from the antitrust defendant." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 88 (3d Cir. 2011); *accord Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1289 (11th Cir. 2014).[4] But here that is not the case: Plaintiffs do not purchase the tied product. They are not retailers who purchase logistics services for the warehousing, packing, and shipping of their goods. Rather, Plaintiffs allege they purchased "items" (¶ 182) such as "skin care products, shampoo, consumer electronics, clothing, children's toys, child-proof cabinet locks, stroller accessories, bedding, kitchen supplies, eating utensils, drinkware, skateboarding equipment, and jewelry" (¶ 42). Because Plaintiffs do not (and cannot) allege they purchased the allegedly tied product—FBA—they cannot possibly have suffered antitrust injury.

The Section 2 claim suffers from the same problem, as it is based on harm in the same allegedly tied product market: "logistical services for retail goods." (¶ 188). As with Section 1, the harm alleged in a Section 2 claim must occur in the supposedly monopolized market. *See Qualcomm*, 969 F.3d at 992. But the complaint does not allege that end consumers such as Plaintiffs purchase fulfillment/logistics services—instead, they purchase retail goods. (¶¶ 20, 22, 24–25). Plaintiffs therefore fail to allege antitrust injury and lack standing to bring these claims.

---

[3] *See, e.g.*, *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 614 (1953) ("The common core of the adjudicated unlawful tying arrangements is the forced purchase of a second distinct commodity with the desired purchase of a dominant 'tying' product, resulting in economic harm to competition in the 'tied' market."); *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) ("Tying arrangements are forbidden on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product."); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1183 (W.D. Wash. 2021) (Martinez, J.) (same).

[4] Although at least one case has suggested that directly purchasing the tying product is sufficient, *see Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 889 (10th Cir. 1997), that does not aid Plaintiffs here: Plaintiffs do not and cannot allege they purchased the alleged tying product, i.e., placement in the "Buy Box." (*See* ¶¶ 24, 175, 177.)

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

B.     **Plaintiffs are at best indirect purchasers.**

Even if Plaintiffs could somehow characterize themselves as having purchased logistics and fulfillment services—and, as discussed above, they clearly made no such purchases—they would at best be indirect purchasers unable to bring a private antitrust damage claim under federal law. The Supreme Court has adopted a bright-line rule precluding indirect-purchaser actions because "allowing indirect purchasers to recover using pass-on theories . . . would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." *Illinois Brick*, 431 U.S. at 740.

Plaintiffs' concession that they made their purchases from third-party sellers through Amazon's store demonstrates that any harm they purportedly suffered was at best indirect and secondary. (¶¶ 42–43, 151, 182, 194). Plaintiffs claim to have been injured because "Sellers can and do pass on the cost of Amazon's Fulfillment services" to consumers. (¶¶ 133, 181, 191). But private plaintiffs cannot recover for this sort of injury. In *Apple v. Pepper*, 139 S. Ct. 1514, 1518 (2019), for example, the Court allowed consumers who purchased iPhone applications from Apple to pursue their claims only because "Apple s[old] the apps directly to iPhone owners" and "iPhone owners bought the apps directly from Apple." *Id.* at 1519–20. Those plaintiffs not only purchased a product in the alleged market in which anticompetitive harm occurred—"the retail market for the sale of apps," *id.* at 1518–20—but also purchased the product directly from the defendant Apple. Plaintiffs here allege the opposite: They concede they made no purchases in the market where anticompetitive harm purportedly occurred—"logistics services for retail goods" (¶¶ 175, 177, 188)—and that they purchased goods from an intermediary, namely the third-party sellers who themselves purchased FBA services in the alleged harmed market. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748-50 (9th Cir. 2012). For this additional reason, the Court should dismiss Plaintiffs' claims.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

C.      **Plaintiffs' alleged injuries are at best remote and speculative.**

To have standing, Plaintiffs also must allege an injury that is the "direct result" of anticompetitive conduct; the harm cannot be "derivative and indirect" or "secondary, consequential, or remote." *City of Oakland*, 20 F.4th at 458; *accord Lucas v. Bechtel Corp.*, 800 F.2d 839, 844–45 (9th Cir. 1986). Antitrust standing is available only to parties "injured at the first step of the causal chain of the defendants' actions." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 134–35, 139–40 (2d Cir. 2021).

Plaintiffs hypothesize that the following causal chain leads to consumers paying higher prices: (1) Amazon allegedly designs the algorithm for placement in the "Buy Box" so that using FBA is the most influential variable (¶¶ 22, 116–123); (2) some sellers who would not otherwise use FBA therefore decide to do so (¶¶ 36, 177); (3) Amazon allegedly induces these sellers to pay higher prices for FBA than they would to alternative logistics carriers that warehouse and ship goods (¶¶ 25, 31, 91); (4) the sellers supposedly pass on the costs by charging consumers higher prices for their goods (¶¶ 39, 129–136); and (5) consumers allegedly ignore lower-priced options on Amazon's store or at other retailers and opt to purchase the higher-priced offer featured in the "Buy Box" (¶¶ 8, 29, 55). Every one of these steps (and many more) would need to occur for any plaintiff to have been harmed by the alleged conduct.

Under Ninth Circuit law, this purported injury is far too indirect. In *In re ATM Fee Antitrust Litigation*, for example, the Ninth Circuit held that ATM cardholders lacked antitrust standing to challenge alleged fixing of ATM "interchange fees," which card-issuing banks pay to the owners of ATMs. 686 F.3d at 744–45, 748–50. Plaintiffs there alleged their banks passed on interchange fees by including them in "foreign ATM fees" paid directly by cardholders, but the fact that cardholders "never directly paid interchange fees" was fatal to their claims. *Id.* at 749–50. So too here: Plaintiffs' allegation that sellers pass on the costs of FBA is insufficient to support standing. Myriad cases dismiss, at the pleading stage, claims like Plaintiffs' that fail to allege injury

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

occurring at the ***first step*** after the alleged anticompetitive conduct.[5] Here, at least ***five steps*** must occur before any Plaintiff could be injured.[6] And the Amended Complaint concedes that the direct impact of the alleged tying arrangement is on sellers, who allegedly may "pass on" those costs to end consumers. (¶¶ 125–136). Plaintiffs—who did not purchase FBA—could not possibly have been injured at the "first step" following the allegedly anticompetitive conduct. (*See* ¶¶ 115–141).

Plaintiffs' alleged injuries are too remote from the challenged conduct, and far too speculative, for them to be proper enforcers of the Sherman Act.

### D.   Plaintiffs' claims risk duplicative recovery and complexity in apportioning damages.

Plaintiffs' claims also should be dismissed where they risk duplicative damages. Plaintiffs allege their damages result from higher costs supposedly passed on to them by sellers (¶¶ 129–136), suggesting that—if Plaintiffs' claims were meritorious—these sellers also could sue and collect treble damages for the same conduct, especially as they would be better positioned to bring the claim, since they directly purchase the tied product. The sellers are "potential plaintiffs" at a higher "level in the distribution chain," thus creating the risk of "conflicting claims to a common fund, the amount of the alleged overcharge" and "the danger of multiple liability for the fund and prejudice to absent plaintiffs." *AGC*, 459 U.S. at 544.

---

[5] *E.g.*, *City of Oakland*, 20 F.4th at 460 ("too many speculative links in the chain of causation" between alleged anticompetitive conduct and injury); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 140–41 (merchants who did not accept American Express cards lacked standing to pursue claim that contractual provisions caused competing credit card issuers to charge higher merchant fees); *Andrx Pharms. v. Biovail Corp. Int'l*, 256 F.3d 799, 817 (D.C. Cir. 2001) ("We are more likely to find no standing if the plaintiff's injury both derives from and is measured by another's more direct injury."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 960–61 (N.D. Ill. 2018) (no viable tying claim where plaintiffs did not purchase both tying and tied product); *Dimartino v. BMW of N. Am., LLC*, 2016 WL 4260788, at *4 (D.N.J. Aug. 11, 2016) (consumer who purchased replacement fuel injectors from his car dealer could not pursue tying claim based on car manufacturer's alleged monopoly on aftermarket parts, since he did not purchase injectors directly from manufacturer); *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *7–8 (N.D. Cal. Jan. 9, 2012) (complaint dismissed where purchasers of collectible coins on eBay only indirectly purchased "coin grading services," which eBay required for coin to be listed as "certified").

[6] Plaintiffs offer two ancillary theories of harm: (1) because only the 73% of sellers who use FBA can realistically compete for the Featured Offer, overall price competition on Amazon is reduced (¶¶ 30, 126–128); and (2) because tying forces sellers to charge higher prices, Amazon *qua* retailer can charge higher prices (¶¶ 32, 137–141). These theories add even more steps to the causal chain.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Partitioning out the degree to which sellers passed on the alleged costs of FBA would require precisely the kind of complex and highly speculative analysis courts seek to avoid in antitrust cases by dismissal at the pleading stage. *AGC*, 459 U.S. at 543 (stating importance of "keeping the scope of complex antitrust trials within judicially manageable limits"); *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 123 F. Supp. 3d 1219, 1232 (C.D. Cal. 2015) (indirect nature of injuries necessarily creates complexity in apportioning damages); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 264 (E.D.N.Y. 2016) ("long and complicated proceedings" would be necessary to determine damages passed down to consumers from direct payors of allegedly anticompetitive fees), *aff'd*, 663 F. App'x 71 (2d Cir. 2016). Assessing Plaintiffs' damages would require speculation about what sellers would have done in the absence of the challenged practices: Which alternative logistics providers, and which of their storage and shipping options, would sellers have used? Would those services have cost more or less than FBA? Been faster or slower? How do the tradeoffs match consumer preferences? The Ninth Circuit has held that the need for such an exercise weighs against finding standing. *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 543 (9th Cir. 1987) (rejecting standing where apportioning damages would require "analysis of how much tuna and from whom the canneries would have bought if prices had been different; what expenses a vessel owner would have deducted; or what wages would have been paid if prices had been different").

The "risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other," *AGC*, 459 U.S. at 544, confirms that Plaintiffs are not "proper parties to bring this antitrust action," *Eagle*, 812 F.2d at 543.

*          *          *

Plaintiffs' failure to plausibly allege antitrust injury or antitrust standing requires dismissal of each of their claims. The defects discussed above are fatal and irremediable; dismissal should be with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II. Plaintiffs fail to plead a Section 1 tying claim.

Tying occurs when a firm "sell[s] one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that [it] will not purchase that product from any other supplier." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958). Tying arrangements are not automatically unlawful; they are often procompetitive. *See Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 36 (2006); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1201 (9th Cir. 2012). At a minimum, a plaintiff must allege (1) a tie between two separate products, (2) sufficient economic power in the tying product market and the coercion of customers into purchasing the tied product, and (3) sufficient anticompetitive effects in the tied product market. *Qualcomm*, 969 F.3d at 991; *Brantley*, 675 F.3d at 1197 n.7; *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1112 (9th Cir. 2021). Plaintiffs' Amended Complaint lacks sufficient allegations on all three required elements.

### A. Plaintiffs do not identify separate, tied products.

#### 1. The "Buy Box" is not a product.

A tying claim requires two distinct products. *See, e.g.*, *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11–12 (1984); *Brantley*, 675 F.3d at 1197 n.7; *Siva v. Am. Bd. of Radiology*, 512 F. Supp. 3d 864, 868 (N.D. Ill. 2021) ("[U]nder either the *per se* rule or the rule of reason, the plaintiff must establish that a tie exists between two separate products."). A "product" can be an intangible service, but only if it is separately available for purchase. *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 974 (9th Cir. 2008) (franchises are "methods of doing business, not products," and the "method of doing business . . . is not sold separately from the ingredients that go into the method of business"); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (tying arrangement requires a "condition linked to a *sale*"); *Redd v. Shell Oil Co.*, 524 F.2d 1054, 1057 (10th Cir. 1975) (item cannot be considered a "product" if it is not separately for sale); *Refrigeration Eng'g Corp. v. Frick Co.*, 370 F. Supp. 702, 711 (W.D. Tex. 1974) (distribution contract was not a "product" for antitrust purposes because it was not "sold or marketed separately, or, indeed, sold at all").

Plaintiffs do not and cannot allege that the purported tying "product"—placement in the so-called "Buy Box" (¶ 175)—is something that can be purchased or that Amazon licenses. Plaintiffs concede, rather, that placement in the "Buy Box" is the customer-facing result of an algorithm integrated into Amazon's online store—the offer, among several offers for purchase of the same product, that Amazon chooses to feature (much like a brick-and-mortar retailer's decision to display certain goods in a shop window). (¶¶ 19, 22, 60, 61). Courts in this Circuit and others flatly reject attempts to cast integrated features of technological platforms as tying products. *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *11–12 (N.D. Cal. Nov. 30, 2021) (dismissing tying claim where iOS distribution tools were "integrated features of Apple's app approval process" and not separately sold/licensed products); *Epic Games, Inc. v. Apple, Inc.*, 2021 WL 4128925, at *108–09 (N.D. Cal. Sept. 10, 2021) (dismissing claim that Apple's in-app purchase system was a product for tying purposes); *Serv. & Training, Inc. v. Data Gen. Corp.*, 737 F. Supp. 334, 342–43 (D. Md. 1990) (rejecting claim positing integrated service and maintenance for software program as "tied product"), *aff'd*, 963 F.2d 680 (4th Cir. 1992). Notably, in rejecting Epic Games' claim, the District Court for the Northern District of California described Apple's in-app purchasing as a "comprehensive system to collect commission[s] and manage in-app payments," presented to the customer as a "single interface" and "engineered specifically to work seamlessly" with iOS. *Epic Games, Inc.*, 2021 WL 4128925, at *43–44, *109. Likewise, the Featured Offer is not a separate product available for purchase, but rather one integrated component of the Amazon store that works so "seamlessly" Plaintiffs concede many buyers do not even notice it at all. (¶ 61).

Plaintiffs' allegations illustrate this point. They emphasize that "the biggest factor in running a successful business online is location" (¶ 7) and refer at length to product "placement" on Amazon (¶¶ 20, 24, 28, 40, 76, 82, 100, 175–177, 181, 185). But no court would conclude that a brick-and-mortar store's decisions about window displays are a "product" for tying purposes. Likewise, the method by which Amazon chooses to display competing inventory does not

magically transform into a tying "product" simply because the sales occur online. As a result, the Court should dismiss Plaintiffs' claim with prejudice.

### 2.   An alleged relationship between the Featured Offer and FBA is not a legally cognizable tie.

Even if Plaintiffs could show that Featured Offer was a distinct product, they fail to allege a cognizable tie. At best, the "Buy Box" (Featured Offer), as alleged by Plaintiffs, is a feature on the website—an aspect of technological product design. (¶ 22 ("Amazon has forced Sellers to buy its Fulfillment services by *designing* its Buy Box algorithm"); ¶ 125 ("Amazon has intentionally *designed* its algorithm"); ¶ 126 ("Amazon's *design* of the Buy Box algorithm")). But product design decisions cannot serve as the basis for a tying claim. Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1757a (5th ed. 2021) ("[T]he challenged product design is ordinarily a unilateral act, thus not satisfying Sherman § 1 or Clayton § 3's requirement of an agreement.").

Plaintiffs assert liability under the *per se* rule. (¶¶ 39, 174). But *per se* liability is patently inappropriate for a so-called "technological tie." *See Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542 (9th Cir. 1983) ("Product innovation . . . is in many cases the essence of competitive conduct. Therefore, we decline to place such technological ties in the category of economic restrictions deemed *per se* unlawful."); *see also, e.g., Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999–1000 (9th Cir. 2010) (holding, in Section 2 context, that "product improvement by itself" is not violation, "even if it is performed by a monopolist and harms competitors"). This is especially true when it comes to the cutting-edge way that Amazon has designed its Featured Offer algorithm to weigh multiple factors, as "novel business practices—*especially* in technology markets—should not be conclusively presumed to be unreasonable and therefore illegal." *Qualcomm*, 969 F.3d at 990 (emphasis in original); *cf. United States v. Microsoft Corp.*, 147 F.3d 935, 948 (D.C. Cir. 1998) ("Antitrust scholars have long recognized the undesirability of having courts oversee product design, and any dampening of technological innovation would be at cross-purposes with antitrust law.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Recent case law in this Circuit demonstrates that a tying claim cannot be asserted with respect to integrated features of technological platforms, such as the algorithm design Plaintiffs assail in their Amended Complaint. For example, a sister court rejected both *per se* and rule-of-reason tying claims complaining that iTunes music files could be played only on the iPod. *Apple iPod iTunes Antitrust Litig.* ("*Apple I*"), 2009 WL 10678931, at \*4 (N.D. Cal. May 15, 2009); *Apple iPod iTunes Antitrust Litig.* ("*Apple II*"), 2009 WL 10678940, at \*5–6 (N.D. Cal. Oct. 30, 2009). The court there held that, absent a "contract, combination in the form of trust or otherwise, or conspiracy," the relationship between the music files and the iPod was technological and not "condemned by federal antitrust law." *Apple I*, 2009 WL 10678931, at \*2, \*5. Here, any alleged relationship between the Featured Offer algorithm and FBA is similarly technological. Plaintiffs may disagree with Amazon's algorithm design choices, but that does not mean they have a legally actionable tying claim. *See It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 689 (4th Cir. 2016) ("With advances in modern technology comes even greater potential for efficient integration, increased compatibility among products, and ties that are technological as much as or more than contractual. . . . It would be unfortunate if an overly aggressive tying doctrine were to impede that innovation.").

## B. Plaintiffs allege neither market power in the tying product market nor that any purchaser was "coerced" into purchasing the tied product.

It should come as no surprise that, having failed to allege the putative "tying product" is in fact a product, Plaintiffs also fail to describe a plausible tying product market in which such a service might compete (and thus they cannot allege market power), for "[w]ithout a product, there is no market." *Epic Games, Inc.*, 2021 WL 4128925 at \*86; *see also Coronavirus Rep.*, 2021 WL 5936910, at \*13 (dismissing tying claim where plaintiffs did not "define markets for actual products"). Plaintiffs assert a puzzling market of "favorable product placement on Amazon's website, and on the internet more broadly." (¶ 175(i)). They do not explain what "favorable product placement" is, much less how it applies to "Amazon's website" or "the internet more broadly." To the extent the definition is meant to apply only to Amazon, it would be an implausible

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

single-brand market.[7] Concerning "the internet more broadly," Plaintiffs fail to explain, for example, whether "favorable product placement" includes banner ads on prominent websites, in-stream ads before YouTube videos, or sponsored articles featuring a product, nor do they suggest Amazon has market power over such potential substitutes.

The vague language of the Amended Complaint does nothing to define a relevant antitrust market or power within that market, much less with the requisite plausibility. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120–21 (9th Cir. 2018) (proposed market definition must "encompass the product at issue as well as all economic substitutes for the product," rather than being "artificial" or "contorted to meet [plaintiffs'] litigation needs"). Plaintiffs' failure to define their purported "market" in even rough contours, much less by reference to reasonable substitutes, cross-elasticity of demand, or any other recognized means of identifying the contours of an antitrust market, is fatal. *Id.* at 1120–21 (market cannot inexplicably "omit many economic substitutes"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436, 442–43 (3d Cir. 1997) (rejecting tying claim for failure to plead product market based on "reasonable interchangeability and cross-elasticity of demand"). Such an artificially narrow definition is fatally problematic, particularly in the context of emerging technologies. *See Reilly v. Apple Inc.*, 2022 WL 74162, at *5–6 (N.D. Cal. Jan. 7, 2022) (dismissing tying claim where plaintiff failed to explain why proposed market for distribution of mobile applications included Apple's App Store but excluded Google Play store); *In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990, at *3 (N.D. Cal. May 13, 2021) (rejecting proposed definition of online advertising market that excluded providers other than Google). Plaintiffs' market definition is "facially unsustainable" and their claim must be dismissed with prejudice. *Hicks*, 897 F.3d at 1120.

And even had Plaintiffs alleged a plausible market definition, they would be unable to show the coercion required for a tying claim. *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159

---

[7] In general, a seller's "own products do not themselves comprise a relevant product market," and "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product." *Apple, Inc.* v. *Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(9th Cir. 2003) (tying claim requires "proof that the seller coerced a buyer to purchase the tied product"). Plaintiffs assert that sellers were coerced into purchasing FBA (¶¶ 84, 125, 177), but allege no facts suggesting a contractual requirement or direct condition requiring sellers to do so. To the contrary, Plaintiffs admit Amazon does not actually require that sellers use FBA. (¶ 86). *See Cherrone* v. *Florsheim Dev.*, 2012 WL 6049021, at *5 (E.D. Cal. Dec. 5, 2012) (dismissing tying claim where plaintiff offered only "broad and conclusory statements" but made "no allegations as to *how* defendants 'steered' or 'mandated'" purchase of tied product); *Aerotec Int'l, Inc.*, 836 F.3d at 1178–80 ("implied tie" not viable where "chain of logic and evidence is too attenuated"). Plaintiffs claim 73% of sellers use FBA—apparently suggesting an "implied" tie (¶¶ 36, 84, 126, 127). But Plaintiffs do not allege these 73% of sellers use FBA to the exclusion of other means of logistics/fulfillment, nor do they account for the fact that a great many sellers (over 25%, even accepting Plaintiffs' figure) continue to do business on Amazon without using FBA at all, further underscoring that the implied tie they assert is far "too attenuated" to survive 12(b)(6) scrutiny. *Aerotec Int'l*, 836 F.3d at 1179–80.

### C.     Plaintiffs fail to show sufficient anticompetitive effects in the tied product market.

Plaintiffs also do not plead sufficient anticompetitive effects in logistics/fulfillment (the putative tied product market) under either a *per se* or rule-of-reason theory (¶¶ 174, 179). *See State Oil Co. v. Khan*, 522 U.S. 3, 3 (1997) (requiring "predictable and pernicious" anticompetitive effect under *per se* standard); *Jefferson Parish*, 466 U.S. at 31 (mandating that plaintiffs show "actual adverse effect" on competition under rule-of-reason theory). They make no meaningful effort to show the "types of injuries to competition that are typically alleged to flow from tying arrangements," such as raising barriers to entry or causing customers to forgo the purchase of substitutes for the tied product. *See, e.g.*, *Brantley*, 675 F.3d at 1201. Plaintiffs do not attempt to allege that shipping costs have gone up, that delivery times have gotten worse, that the quality of customer service has declined, that barriers to entry are higher, or any of the other anticompetitive effects that would be necessary. Unsurprisingly, they instead claim, with no factual support, that

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Amazon's conduct "has decreased competition in the logistics market (the tied product market) and has put numerous competitors in that market out of business." (¶ 178).[8] This conclusory assertion of harm to competition does not come close to satisfying Plaintiffs' burden. *Rick-Mik Enters.*, 532 F.3d at 973 (conclusory allegation lacked "factual specificity required" to survive motion to dismiss); *AFMS, LLC v. United Parcel Serv. Co.*, 2011 WL 13128436, at *16 (C.D. Cal. Nov. 23, 2011) ("Without facts regarding the actual impact of defendants' policies on the relevant market and the injurious effects they have had on competition in that market, the complaint fails to plead an essential element of a [Section 1] claim."). As a result, the Court should dismiss their tying claim.

## III.    Plaintiffs fail to plead a monopolization claim under Section 2.

"The offense of monopoly under Section 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *see also Qualcomm*, 969 F.3d at 990. Plaintiffs fail to plead either element because they allege mere "monopoly leveraging," which is not anticompetitive conduct, and because they do not (and cannot) show monopoly power in the relevant market of logistics and fulfillment. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547–48 (9th Cir. 1991); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997).

### A.    Plaintiffs do not allege actionable anticompetitive conduct.

Plaintiffs' Section 2 claim fails because they allege only "monopoly leveraging," (¶¶ 183–194), which by itself is, as a matter of law, not anticompetitive. *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004). This Circuit does not recognize a theory of monopoly leveraging where a firm uses "its monopoly power in one market" to "gain a

---

[8] Plaintiffs suggest that Amazon's outperformance of USPS somehow shows anticompetitive conduct. (¶ 180). But allegations that a defendant may have outcompeted a third party does not show the "actual adverse effect" required for a claim to survive. *See Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

competitive advantage in another." *Image Tech. Servs., Inc.*, 125 F.3d at 1209; *see Alaska Airlines*, 948 F.2d at 547–48; *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996). Thus, to sustain their Section 2 claim, Plaintiffs must allege that Amazon engaged not only in leveraging, but also in conduct that courts actually recognize as anticompetitive. *John Doe I v. Abbott Laboratories*, 571 F.3d 930, 931 (9th Cir. 2009). Here, Plaintiffs' sole theory of anticompetitive conduct turns on the alleged tie between the "Buy Box" (Featured Offer) and FBA. (¶ 189). But, as explained in Part II, *supra*, Plaintiffs cannot show such a tying arrangement as a matter of law. *Foremost Pro Color, Inc.*, 703 F.2d at 544 ("[T]he introduction of technologically related products . . . is alone neither a predatory nor anticompetitive act."). And, if Plaintiffs fail to plead anticompetitive conduct under Section 1, then they certainly cannot satisfy the "more exacting" standard of Section 2 based on the same factual allegations. *Qualcomm*, 969 F.3d at 991–92 ("If, in reviewing an alleged Sherman Act violation, a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2."); *see also* Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 776 (5th ed. 2021) (product design decisions "never violate § 2"). Plaintiffs' failure to allege any actionable anticompetitive conduct merits dismissal with prejudice.

### B.   Plaintiffs fail to allege monopoly power in the relevant market.

Even if Plaintiffs could plead anticompetitive conduct, their inability to allege monopoly power—or anything approaching it—in the logistics market is fatal to their claim. In this Circuit, "a market share of less than 50 percent is presumptively insufficient to establish market power" for monopolization. *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995). Thus, to plead a Section 2 claim, Plaintiffs must show (among other things) at least a 50 percent share in the market they claim Amazon monopolized: logistics and fulfillment.[9] Even accepting

---

[9] Although Plaintiffs go on at length regarding Amazon's supposed share of the e-commerce market, that is not the relevant market for their Section 2 claim. As noted in *Eastman Kodak v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992)—a case Plaintiffs themselves cite (¶ 184 n.140)—Plaintiffs must show power in the market targeted by the alleged "monopoly leveraging." In this case, that market is logistics and fulfillment (¶ 188).

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS (2:21-cv-00996 RSM) - 20

Plaintiffs' naked assertions as true, however, Amazon would possess a share of just "one fifth" (20 percent) of the logistics market. (¶ 180, 193). This allegation dooms their Section 2 claim.

## IV.  Most of Plaintiffs' claims are time-barred.

Plaintiffs seek treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15(a). (¶ 195(b)). Those claims are "barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Plaintiffs commenced this action on July 26, 2021. (Compl., Dkt. No. 1). Claims that accrued before July 26, 2017 are therefore time-barred. Plaintiffs nevertheless seek a class period that would begin on January 1, 2013 (¶ 152), which includes roughly four-and-a-half years' worth of purchases that Plaintiffs cannot pursue, as a matter of law. Even if Plaintiffs' claims were otherwise viable (and they are not), the Court should dismiss these time-barred claims.

### A.  Plaintiffs' claims accrued when their alleged injuries occurred, not when they allegedly "discovered" their claims.

Clayton Act claims are subject to a "pure injury accrual rule," meaning that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997). Thus, a plaintiff need not "actually discover its antitrust claims before the statute of limitations begins to run." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); *accord In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015). Plaintiffs nevertheless assert that a "discovery rule" tolled the statute of limitations until November 8, 2019, when major news outlets reported a seller's accusations that FBA was requiring sellers to raise prices. (¶ 163). Before this reporting, Plaintiffs assert, "neither Plaintiffs nor other consumers had any reason to read articles about winning Amazon's Buy Box." (¶ 164).

The premise of this argument is wrong: Nothing requires that plaintiffs "knew or should have known" of their causes of action before the Clayton Act's limitations period began to run. *Klehr*, 521 U.S. at 186, 188; *Hexcel Corp.*, 681 F.3d at 1060, 1062. In any event, Plaintiffs' allegations in this regard only underscore that they are not proper enforcers of the antitrust laws. According to their theory, sellers knew all the facts supporting Plaintiffs' alleged antitrust

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

violations over four years earlier than consumers. (*See* ¶ 26). Plaintiffs' concession that the mechanics of Amazon's Featured Offer have been public and known to sellers and "analysts" (¶¶ 26, 78), certainly does not entitle Plaintiffs to tolling under the discovery rule—even if a discovery rule applied.

### B.   Plaintiffs fail to plead any of the necessary elements for fraudulent concealment tolling.

As a fallback, Plaintiffs suggest that Amazon "fraudulently concealed" its practices related to FBA by sending annual letters to shareholders (not purchasers) stating that Amazon was committed to low prices. (¶¶ 168–172). This falls far short of what is required for fraudulent concealment tolling of the statute of limitations. "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp.*, 681 F.3d at 1060. A plaintiff must plead "facts showing that the defendant affirmatively misled it, and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Id.* (emphasis omitted).

Plaintiffs fail to allege Amazon "affirmatively misled" them regarding their claims. They allege no connection between Amazon's public statements and their failure to investigate their claims. They do not allege they were aware of or relied on the annual letters to shareholders. Nor could they: Not one of these statements even involves the "Buy Box" that forms the basis of Plaintiffs' claims. Plaintiffs' position—that any company generally touting "low prices" is engaged in fraudulent concealment as to any specific conduct that allegedly produced supracompetitive prices—would effectively repeal the Clayton Act's statute of limitations.

Plaintiffs' own allegations rely on screenshots from Amazon's website, showing instances in which the offer featured in the "Buy Box" was ***not*** the lowest-priced offer. (¶¶ 7, 120, 122). It is thus not remotely plausible that Amazon's generic statements about its commitment to low prices were fraudulent misrepresentations or actively concealed the workings of the Featured Offer from Plaintiffs. *Cf. In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (statements

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

regarding Google's commitment to data security and user privacy were "vague and generalized corporate commitments, aspirations, or puffery" insufficient to state securities fraud claim); *Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, 2022 WL 595696, at *2 (9th Cir. Feb. 28, 2022) (conclusory allegations challenging scope of defendant's public disclosures were insufficient to support fraudulent concealment tolling). In fact, the Amended Complaint cites sources published from 2013 through 2016 that disclosed the basic arrangements Plaintiffs challenge. (¶¶ 83, 85–86, 117). Plaintiffs' purported lack of granular awareness regarding the workings of the "Buy Box" and FBA does not reflect any concealment by Amazon. Rather, it drives home that Plaintiffs were not purchasers of FBA and are improper parties to raise claims about conduct that directly affected only sellers.

Nor do Plaintiffs allege any diligent investigation of their claims, without which they are barred as a matter of law from asserting fraudulent concealment. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (where publicly available facts would have led reasonable person to inquire, failure to plead diligent investigation defeated fraudulent concealment argument).

## CONCLUSION

For the foregoing reasons, the Court should grant Amazon's motion and dismiss the Amended Complaint with prejudice.

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 4th day of April, 2022.

Davis Wright Tremaine LLP

By  */s/ Stephen M. Rummage*
    Stephen M. Rummage, WSBA #11168
    Adam Sieff, *pro hac vice forthcoming*
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone: 206.622.1350
    Fax: 206.757.7700
    Email: steverummage@dwt.com
    Email: adamsieff@dwt.com

By  */s/ John Schmidtlein*
    John Schmidtlein*
    Jonathan B. Pitt*
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, DC 20005
    (202) 434-5000
    Email: jschmidtlein@wc.com
    Email: jpitt@wc.com

    * *pro hac vice application forthcoming*

Attorneys for Amazon.com, Inc.

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS
(2:21-cv-00996 RSM) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax