**United States District Court**
**Western District of Washington**

ANGELA HOGAN and ANDREA SEBERSON, on behalf of themselves and others similarly situated,

Plaintiffs,

*v.*

AMAZON.COM, INC.,

Defendant.

Case No. 2:21-cv-996-RSM

**PLAINTIFFS' RESPONSE OPPOSING DEFENDANT AMAZON'S MOTION TO DISMISS**

## Table of Contents

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.    PLAINTIFFS' ALLEGATIONS ............................................................. 2

III.   ARGUMENT ........................................................................................... 6

    A.    Plaintiffs have antitrust standing .................................................. 6

          1.    Plaintiffs are direct purchasers under the Supreme Court's recent decision in Apple, Inc. v. Pepper ......................... 6

          2.    Plaintiffs have antitrust standing because they adequately allege that they suffered an antitrust injury as a direct result of Amazon's anticompetitive conduct ................................................. 8

          3.    That third-party Sellers may have their own antitrust claims against Amazon does not create a risk of duplicative recovery ..... 11

    B.    Plaintiffs' Complaint states a tying claim under Section 1 of the Sherman Act ................................................................................. 12

          1.    Placement in the Amazon Buy Box is a product under the antitrust laws, one that is distinct and separate from Fulfillment by Amazon .............................................................................. 12

          2.    Plaintiffs have adequately alleged an unlawful, anticompetitive tie between Sellers' placement in the Buy Box and their purchase of FBA ....................................................................... 15

          3.    Plaintiffs adequately allege that Amazon has market power in two tying markets .......................................................... 16

          4.    Plaintiffs' Complaint contains detailed—and supported—allegations of how Amazon coerced Sellers into purchasing FBA, the tied product .................................................................................. 17

          5.    Plaintiffs' allegations of effects in the tied market state a tying claim under both the per se and rule of reason standards ..... 19

    C.    Plaintiffs' allegations state a claim under Section 2 of the Sherman Act ................................................................................. 20

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– i –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

D.    None of Plaintiffs' claims is time barred ................................... 21

    1.    Claims based on injuries suffered outside the statute of limitations are tolled by the discovery rule .................................... 22

    2.    Fraudulent concealment tolling applies to Plaintiffs' claims ......... 23

IV.    CONCLUSION ............................................................................ 24

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– ii –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**Table of Authorities**

**Page**

*Abbott Labs v. Teva Pharm. USA, Inc.*,
    432 F. Supp. 2d 408 (D. Del. 2006) .................................................. 15

*AD/SAT v. Associated Press*,
    920 F. Supp. 1287 (S.D.N.Y. 1996) ................................................ 14

*Aerotec Internat'l, Inc. v. Honeywell Internat'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016)........................................................15, 18

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
    592 F.3d 991 (9th Cir. 2010).............................................................. 15

*Apple, Inc. v. Pepper*,
    139 S. Ct. 1514 (2019).............................................................*passim*

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 9
    48 F.2d 536 (9th Cir. 1991) ............................................................ 21

*Alivecor, Inc. v. Apple Inc.*,
    No. 21-cv-03958-JSW,
    2022 U.S. Dist. LEXIS 49881 (N.D. Cal. Mar. 21, 2022) ................................. 17

*Associated General Contractors v. California State Council of Carpenters*,
    459 U.S. 519 (1983) ...................................................................... 10

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ...................................................................... 10

*Beeman v. Mayorkas*,
    No. C21-235 MJP,
    2021 U.S. Dist. LEXIS 143005 (W.D. Wash. July 29, 2021) ............................. 5

*Blue Shield of Virginia v. McCready*,
    457 U.S. 465 (1982) ....................................................................... 9

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012).......................................................... 19

*Cave Consulting Grp., Inc. v. OptumInsight, Inc.*,
    No. 15-cv-03424-JCS,
    2020 U.S. Dist. LEXIS 5440 (N.D. Cal. Jan. 10, 2020) ................................. 12

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– iii –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*,
  801 F.2d 908 (7th Cir. 1986) ............................................................ 12

*Coronavirus Reporter v. Apple Inc.*,
  No. 21-cv-05567-EMC,
  2021 U.S. Dist. LEXIS 249564 (N.D. Cal. Nov. 30, 2021) ............... 14

*Cost Management Services, Inc. v. Washington Natural Gas Co.*,
  99 F.3d 937 (9th Cir. 1996) .............................................................. 20

*Eastman Kodak Co. v. Image Tech. Servs.*,
  504 U.S. 451 (1992) .......................................................................... 17

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*,
  24 F.4th 1262, 2022 U.S. App. LEXIS 2719 (9th Cir. 2022) ........... 10

*Epic Games, Inc. v. Apple*,
  No. 4:20-cv-05640-YGR,
  2021 U.S. Dist. LEXIS 172303 (N.D. Cal. Sep. 10, 2021) ............... 13

*Fenerjian v. Nongshim Co., Ltd.*,
  72 F. Supp. 3d 1058 (N.D. Cal. 2014) ..........................................22, 23

*Frame-Wilson v. Amazon.com, Inc.*,
  No. 2:20-cv-00424-RAJ,
  2022 U.S. Dist. LEXIS 44109 (W.D. Wash. Mar. 11, 2022).........16, 17

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
  703 F.2d 534 (9th Cir. 1983) ............................................................ 15

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
  352 F.3d 367 (9th Cir. 2003) ............................................................ 10

*Hexcel Corp. v. Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) .......................................................... 23

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) .......................................................... 21

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ................................................................. 5

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................ 23

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– iv –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*In re Copper Antitrust Litig.*,
    436 F.3d 782 (7th Cir. 2006)......................................................... 22

*In re Korean Ramen Antitrust Litig.*,
    281 F. Supp. 3d 892 (N.D. Cal. 2017)........................................... 22

*In re Packaged Seafood Prods. Antitrust Litig.*,
    2022 WL 789177 (S.D. Cal. Feb. 7, 2022) ................................... 23

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    No. MDL 09-2074 PSG (FFMx),
    2013 U.S. Dist. LEXIS 208787 (C.D. Cal. July 19, 2013).................. 10

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ....................................................................... 12

*Moore v. James H. Matthews & Co.*,
    550 F.2d 1207 (9th Cir. 1977)..................................................... 19

*Nespresso United States v. Ethical Coffee Co.*,
    No. 16-194-GMS (D. Del. Sept. 7, 2016) ..................................... 15

*Newcal Indus. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008)..................................................... 17

*Nobody in Particular Presents, Inc. v. Clear Channel Communs., Inc.*,
    311 F. Supp. 2d 1048 (D. Colo. 2004).....................................13, 14

*Northbay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    838 F. App'x 231 (9th Cir. 2020) ................................................. 10

*Oracle Am., Inc. v. Micron Tech., Inc.*,
    No. C 10-4340 PJH,
    2011 U.S. Dist. LEXIS 28814 (N.D. Cal. Mar. 21, 2011) .................. 10

*Packaging Sys. v. PRC-Desoto Int'l, Inc.*,
    268 F. Supp. 3d 1071 (C.D. Cal. 2017) .....................................18, 19

*Philips N. Am., LLC v. Summit Imaging Inc.*,
    No. C19-1745JLR,
    2020 U.S. Dist. LEXIS 214693 (W.D. Wash. Nov. 16, 2020)........... 17

*Rebel Oil Co. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir.1995)........................................................ 19

*RSA Media, Inc. v. AK Media Grp., Inc.*,
    CIVIL ACTION 97-11250-RWZ,
    2000 U.S. Dist. LEXIS 21379 (D. Mass. Oct. 3, 2000) ...................................... 14

*Service & Training, Inc. v. Data General Corp.*,
    737 F. Supp. 334 (D. Md. 1990) ........................................................................ 14

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
    No. 21-cv-03496-VC,
    2021 U.S. Dist. LEXIS 226077 (N.D. Cal. Nov. 23, 2021) ............................... 12

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992) ............................................................................... 13

*Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*,
    704 F.2d 1141 (9th Cir. 1983) ............................................................................ 22

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................................. 15

*Westinghouse Elec. Corp. v. Pac. Gas & Elec. Co.*,
    326 F.2d 575 (9th Cir. 1964) .............................................................................. 23

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ........................................................................................... 22

## STATUTES

15 U.S.C. § 15b ....................................................................................................... 22

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– vi –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I. INTRODUCTION

Plaintiffs allege that Amazon is violating the antitrust laws by forcing Sellers to use Amazon's Fulfillment services (Fulfillment by Amazon or "FBA") as a condition of having their product offer appear in the "Buy Box," through which 90% of sales on Amazon.com are made. Through its unlawful tying scheme, Amazon is directly overcharging Plaintiffs and other consumers who make purchases through the Buy Box. Among other things, the tying arrangement enables Amazon to charge supracompetitive prices for FBA shipping. Those supracompetitive prices are unwittingly borne by consumers who purchase Buy Box items that are shipped via FBA, as shipping costs are bundled into the prices that consumers pay for items purchased through the Buy Box (and on Amazon.com generally). The allegations in Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint")[1] are detailed, plausible, and supported by numerous public sources, including a report by the House Subcommittee on Antitrust.

Amazon's motion to dismiss should be denied because Amazon's numerous challenges to the Complaint misconstrue Plaintiffs' allegations, misapply the legal standards governing motions to dismiss, and mischaracterize legal authority. For example, in arguing that "Plaintiffs are at best indirect purchasers," Amazon cites the recent Supreme Court decision in *Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019). Dkt. #26, Def. Amazon.com, Inc.'s Mot. to Dismiss at 9 [hereinafter Mot. to Dismiss]. But Amazon neglects to mention that *Pepper* undercuts Amazon's argument, as the Court in *Pepper* held that consumers *were* direct purchasers in a retail scenario that is conspicuously similar to the one alleged here.

Amazon also contends that Plaintiffs fail to allege market power in the tying product market. This contention demonstrates Amazon's failure to read the Complaint as a whole and its willful disregard of allegations that it finds inconvenient. Amazon states that

---

[1] The operative Complaint is at Dkt. #23.

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 1 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs define the tying market as the "market for favorable placement on Amazon's website, and on the internet more broadly" but "do not explain what 'favorable product placement' is." Mot. to Dismiss at 16. Amazon's argument overlooks—and fails to address—Plaintiffs' allegation that "Amazon has a monopoly level of market power in two markets (the tying-product markets): (i) the online retail market in the United States (also referred to as the retail e-commerce market), . . . and (ii) the market for placement in Amazon's Buy Box . . . ." Compl. ¶ 185. Nor does Amazon mention that a judge in this district recently concluded in another antitrust case against Amazon that the U.S. retail e-commerce market—the same market alleged by Plaintiffs here—is a valid market for purposes of surviving a motion to dismiss.

These attempts to evade Plaintiffs' allegations and relevant authority are typical of the arguments advanced by Amazon in its motion to dismiss, and should be rejected by the Court. Plaintiffs have adequately pleaded all elements of their claims under Sections 1 and 2 of the Sherman Act, and Amazon's motion to dismiss should be denied in its entirety.

## II.  PLAINTIFFS' ALLEGATIONS

Amazon controls more than 50% of the U.S. retail e-commerce market by dollar amount and is projected to control 73.5% of that market by 2026. Compl. ¶¶ 4, 48. Moreover, 65 to 70% of all online retail transactions in the United States occur through Amazon. *Id.* ¶ 4, 185. But Amazon's ambitions have never been limited to the e-commerce market. In 2006 Amazon entered the logistics business by launching Fulfillment by Amazon. *Id.* ¶ 13. FBA offers warehousing, packing, and shipping services to third-party sellers ("Sellers") who offer items for sale through Amazon.com. *Id.*

Amazon's goal in launching FBA was to eventually "dominate the $1.5 trillion-per-year shipping and logistics industry." *Id.* ¶ 14. Amazon is hurtling toward that goal. The company went from having a "zero share of the U.S. shipping market as recently as

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 2 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2014" to having "21% of the U.S. shipping market" in 2020—"right behind UPS (24%) and ahead of FedEx (16%)":[2]



Contrary to Amazon's assertions, the company did not capture a quarter of the U.S. shipping market in a few years just by "making risky and significant investments to build a world-class logistics network." Mot. to Dismiss at 1. Rather, Amazon attained explosive growth in the logistics market by unlawfully leveraging its power over e-commerce to "simply force Sellers to purchase its Fulfillment services." Compl. ¶¶ 15–16. Amazon did so by tying Sellers' ability to make sales through its website to Sellers' purchasing Amazon's Fulfillment services. *See id.* ¶¶ 20–24, 78–84.

Specifically, Amazon rigged its product details page so that offers from Sellers who do not purchase Amazon's Fulfillment services do not appear in the "Buy Box." *See* Compl. ¶¶ 21–24, 78–84. Access to the Buy Box is uniquely valuable to Sellers because

[2] Erica Pandey, *Amazon is now a bigger shipper in the U.S. than FedEx*, AXIOS (Oct. 21, 2021), https://bit.ly/3OhXUcf; *see also* Compl. ¶ 193 ("Amazon's logistics operation now rivals the top carriers in scale. In 2019, Amazon delivered 2.5 billion parcels, or about one-fifth of all e-commerce deliveries.").

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 3 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

90% of consumer purchases on Amazon's website are made through the Buy Box.[3] Amazon's immense power over Sellers is further evidenced by the fact that "[o]f the 2.3 million active third-party Sellers from around the world, about 37%—or 850,000—of Sellers 'rely on Amazon as their sole source of income.'" *Id.* ¶ 17. Sellers understand that access to the Buy Box is critical to their success, and indeed, there are books and blogs devoted to "winning" the Buy Box." *Id.* ¶¶ 62–65

But for Amazon's tying access to the Buy Box to Sellers' purchasing its Fulfillment services, most Sellers would not use FBA because Amazon's Fulfillment services are slower, less reliable, and more expensive than alternatives. *See, e.g.*, Compl. ¶ 25 ("Amazon raised logistics fees by 20% over the [previous] four years [before 2019] until they cost as much as 35% more than competing services." (internal quotation marks omitted)).[4]

Coercing Sellers to pay for FBA in exchange for Buy Box placement has been extremely lucrative for Amazon: "approximately 85% of the top 10,000 Amazon Sellers—and 73% of Sellers worldwide—use FBA." Compl. ¶ 84. The result of Amazon's unlawful tying scheme is that, "if two Sellers—one of whom pays for Amazon's Fulfillment services while the other doesn't—offer the same product on Amazon.com, the Seller who pays Amazon for Fulfillment services will 'win' the Buy Box and make the sale, even if the competing Seller offers a lower total price and faster, more reliable shipping." *Id.* ¶ 23.

---

[3] The Buy Box is "the section on the right side of an Amazon product detail page where customers can add a product to their cart or 'buy now.'"[3] Compl. ¶¶ 7–8. Throughout its motion to dismiss, Amazon refers to the Buy Box as the "Featured Offer." Because third-party Sellers, industry insiders, the 2020 House Subcommittee Report, and even Amazon's prominent former CEO Jeff Bezos use the term Buy Box (*see id.* ¶¶ 64–65, 80–82), Plaintiffs will continue to do so.

[4] *See also* Compl. ¶ 92 ("As one logistics consultant explained, the only reason for a Seller to pay for Amazon's Fulfillment services is because they are being coerced to do so" because "[o]n a dollars and cents side, [Fulfillment by Amazon is] not that competitive."); *id.* ¶ 96 ("One Seller told federal lawmakers that '[d]espite the slow delivery times, Amazon's logistics fees were 35% higher than other rapid shipping options offered by UPS and the U.S. Postal Service . . . .'").

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 4 –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Amazon's unlawful tying scheme directly causes higher prices for Plaintiffs and other consumers who make purchases through the Buy Box. Compl. ¶¶ 27–32, 115–41. Most immediately, Amazon's tying scheme causes consumers to pay supracompetitive prices for shipping, as shipping costs are included in the prices that consumers pay for items purchased on Amazon. *Id.* ¶¶ 129–36.

As reflected in the Amazon Services Business Solutions Agreement, regardless of whether an item on Amazon.com is offered by Amazon or a third-party Seller, consumers pay Amazon **directly** for both the item and the *shipping* of that item: "We [Amazon] will receive all Sales Proceeds on your [the Seller's] behalf for each of these transactions and will have exclusive rights to do so, and will remit them to you . . . [5]." Ex. 1, Amazon Services Business Solutions Agreement at § S-1.2 [hereinafter Business Solutions Agreement]; *see also id.* § P-3 (providing that Seller does not "have any right or entitlement to collect Sales Proceeds directly from any customer"); *id.* § S-5 (providing that Amazon "will remit to you [the Seller] your available balance on a bi-weekly (14 day) (or at our option, more frequent) basis" and that "[f]or each remittance, your available balance is equal to any Sales Proceeds not previously remitted to you . . . , less" fees charged by Amazon to the Seller).

Because Plaintiffs and Class Members pay Amazon directly for Fulfillment services, they are participants in the logistics market, which Amazon is attempting to monopolize through its unlawful tying scheme. As Amazon's Agreement with Sellers makes clear, FBA shipping charges are paid directly by the consumer to Amazon, never passing through the Seller's hands. *See id.* § S-4 (providing that "Sales Proceeds"—meaning the gross proceeds

---

[5] In deciding Amazon's motion to dismiss, the Court may consider the Amazon Services Business Solutions Agreement, which is both incorporated by reference into the Complaint (*see* Compl. ¶¶ 49–50) and is the proper subject of judicial notice. *See, e.g., Beeman v. Mayorkas*, No. C21-235 MJP, 2021 U.S. Dist. LEXIS 143005, at *8 (W.D. Wash. July 29, 2021) ("On a motion to dismiss, the Court considers the complaint's allegations, documents 'incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 693–94 (9th Cir. 2021)).

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 5 –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

from the sale of a Seller's item on Amazon—"will not include any shipping charges set by us [Amazon] in the case of Your Transactions that consist solely of products fulfilled using Fulfillment by Amazon").

Through its anticompetitive and unlawful tying scheme, Amazon overcharged consumers by approximately $5 billion in 2020 alone. Compl. ¶ 37.

### III.  ARGUMENT

### A.  Plaintiffs have antitrust standing.

#### 1.  Plaintiffs are direct purchasers under the Supreme Court's recent decision in *Apple, Inc. v. Pepper*.

Amazon contends that Plaintiffs are not direct purchasers because "they made their purchases from third-party sellers through Amazon's store." Mot. to Dismiss at 9. This contention is decisively undercut by the Supreme Court's decision in the strikingly analogous *Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019).

In *Pepper*, consumers sued Apple, alleging that the company had exercised its monopoly-level power to overcharge them for purchases they had made through Apple's App Store. *Id.* at 1518–19. Apple did not create the apps purchased by consumers; rather, it contracted with independent developers to make the developers' apps available in the App Store. *Id.* at 1519. Significantly, although the developers set prices for the apps, Apple sold the apps directly to consumers through the App Store. *Id.* When a consumer purchased an app, Apple collected the payment from the consumer and remitted the balance—minus Apple's 30% commission—to developers. *Id.*

The consumer-plaintiffs argued that, in a competitive environment, "Apple would be under considerable pressure" to lower the 30% commission, which—though nominally paid by the developers to Apple—was in fact an overcharge borne by consumers. *Id.* (internal quotation mark omitted). Apple contended that the consumers were not direct purchasers and therefore lacked antitrust standing, arguing "that *Illinois Brick* allows consumers to sue

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

only the party who sets the retail price [i.e., the app developers], whether or not that party sells the good or service directly to the complaining party." *Id.* at 1521.

The Supreme Court unequivocally rejected Apple's argument, concluding that, "[u]nder *Illinois Brick*, the iPhone owners are direct purchasers from Apple and are proper plaintiffs to maintain [the] antitrust suit." *Id.* at 1521. The Court stated that "[t]he broad text of § 4 [of the Clayton Act]—'any person' who has been 'injured' by an antitrust violator may sue—readily covers consumers who purchase goods or services at higher-than-competitive prices from an allegedly monopolistic retailer." *Id.* at 1520. The Court explained that, "[a]pplying § 4, we have consistently stated that the immediate buyers from the alleged antitrust violators may maintain a suit against the antitrust violators." *Id.* (citations and internal quotation marks omitted).

As in *Pepper*, Plaintiffs here are direct purchasers because they are "the immediate buyers from the alleged antitrust violator[ ]"—Amazon. *Id.* at 1521. The purchases in this case involve both purchases of items supplied by Amazon and items sold on Amazon's website that are supplied by third-party Sellers. *See* Compl. ¶¶ 19, 23, 27–32, 59, 61, 116, 124, 137–38, 151. When a consumer purchases an item that is supplied by Amazon, there can be no dispute that the consumer is buying the item directly from Amazon.

As for purchases involving items supplied by third-party Sellers, such purchases are analogous to the purchases of apps through the App Store that were at issue in *Pepper*. Like the third-party developers in Apple, the third-party Sellers provide the items for sale, but **Amazon sells the items directly to consumers through its website**. Just as Apple collects the payment from the consumer and remits the balance (less its commission) to developers, Amazon "receive[s] all Sales Proceeds on [the Seller's] behalf" and remits those proceeds to the Seller. Ex. 1, Business Solutions Agreement at §§ P-2, S-5.[6] And just like Apple,

---

[6] *See also* Braxton Duhon, *Whose Product Is It Anyway? Examining Amazon's Liability Under the LPLA for Products Sold by Third Parties on its Website*, Louisiana Law Review Online (Oct. 30,

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 7 –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Amazon deducts any fees from the sales proceeds before remitting them to the Seller—

including the fees that Sellers pay for Fulfillment by Amazon. *See id.* at § S-4 ("Sales

Proceeds will not include any shipping charges set by us in the case of Your Transactions

that consist solely of products fulfilled using Fulfillment by Amazon."). Any consumer class

member can easily confirm this by looking at their credit-card statement: all purchases made

on Amazon.com—whether the item is supplied by Amazon or a third-party Seller—are

listed as purchases from Amazon. The Supreme Court's decision in *Pepper* dispels any doubt

that Plaintiffs here are direct purchasers under *Illinois Brick*.

> **2.    Plaintiffs have antitrust standing because they adequately allege that they suffered an antitrust injury as a direct result of Amazon's anticompetitive conduct.**

Amazon argues that Plaintiffs fail to allege antitrust injury because they are neither

competitors nor purchasers in the market for "logistics services for the warehousing,

packing, and shipping of … goods," and they did not "purchase[ ] the ***tied*** product"—

Fulfillment by Amazon—from Defendant Amazon. Mot. to Dismiss at 8 (emphasis in

original). Amazon also maintains that Plaintiffs' injury is "far too indirect" to support

antitrust standing. *Id.* at 10.

Both of these arguments fail because, contrary to Amazon's representations,

Plaintiffs and putative Class Members ***did*** purchase the tied product—Fulfillment services—

directly from Amazon. As explained above, Plaintiffs paid Amazon *directly* for FBA

shipping, whether they were purchasing an item supplied by Amazon or a third-party Seller.

*See* Ex. 1, Business Solutions Agreement at § S-4 ("Sales Proceeds [paid by Amazon to

Sellers] will not include any shipping charges set by [Amazon] in the case of . . . Your

Transactions that consist solely of products fulfilled using Fulfillment by Amazon.").

---

2020) ("In the typical third-party sale on Amazon's website, Amazon charges the customer's credit card, deducts any fees, gathers proceeds from other purchases of that seller's products, and remits periodic payments to the third-party seller."), https://bit.ly/3yhjWpP.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Indeed, Plaintiffs' proposed Class is limited to consumers "who purchased an item during the Relevant Period through Amazon's Buy Box, **and the order was then shipped (or 'fulfilled')** **by Amazon**." Compl. ¶ 151 (emphasis added).

Thus, Plaintiffs paid the supracompetitive Fulfillment fees directly to Amazon, just as the consumers in *Pepper* paid the supracompetitive 30% commission directly to Apple. Both in *Pepper* and here, the supracompetitive prices paid by consumers resulted from a defendant using its economic power to strong-arm third parties—developers in *Pepper*, Sellers here—into agreeing to pay supracompetitive fees to the defendant that were in fact borne by consumers.

As the Supreme Court stated in *Pepper*: "[T]he distinction between a markup and a commission is immaterial." *Pepper*, 139 S. Ct. at 1523. *Pepper* makes clear that, when assessing antitrust injury, the *form* of the economic arrangement in question is subservient to the pragmatic economic *reality* of the commercial relationship. If a retailer like Amazon has engaged in unlawful anticompetitive conduct "that has caused consumers to pay higher-than-competitive prices, it does not matter how the retailer structured its relationship with an upstream manufacturer or supplier—whether, for example, the retailer employed a markup or kept a commission." *Id.* at 1523.

Even if the Court were to determine that consumers' role in the relevant logistic-services market is meaningfully distinguishable from the Sellers' role, Amazon's arguments regarding the lack of antitrust injury still fail because the Supreme Court made clear in *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), that "the market participant requirement can also be satisfied by showing that plaintiffs' injuries were 'inextricably intertwined' with the injuries of the actual market participants." *In re WellPoint, Inc. Out-of-*

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Network "UCR" Rates Litig.*, No. MDL 09-2074 PSG (FFMx), 2013 U.S. Dist. LEXIS 208787, at *27 (C.D. Cal. July 19, 2013) (citations omitted).[7]

There is no question here that Plaintiffs' injuries (paying supracompetitive prices for items shipped using FBA) are inextricably intertwined with the injuries inflicted by Amazon on third-party Sellers (being forced to use the more expensive and inferior Amazon Fulfillment services to gain access to the Buy Box). Nor is there a question that Plaintiffs' injuries (being overcharged for purchases) are "injur[ies] of the type the antitrust laws were intended to prevent" and that the injuries "flow[ ] from that which makes [Amazon's] acts unlawful"—the tying arrangement. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990) (citation and internal quotation marks omitted).

The same conclusion—that Plaintiffs have adequately alleged antitrust standing— follows from the application of the factors set out by the Supreme Court in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983)—namely, "the nature of the injury alleged, the directness of the injury, the speculative nature of the harm, the risk of duplicative recovery, and the complexity in apportioning damages." *Oracle Am., Inc. v. Micron Tech., Inc.*, No. C 10-4340 PJH, 2011 U.S. Dist. LEXIS 28814, at *7–8 (N.D. Cal. Mar. 21, 2011). Plaintiffs here are participants in the tied market for logistics services because they paid for those services when they purchased an item on Amazon.com that was

---

[7] *See also Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 2022 U.S. App. LEXIS 2719, at *27 (9th Cir. 2022) (concluding that Plaintiff "adequately allege[d] antitrust injury" where increased price borne by Plaintiff was "'inextricably intertwined' with . . . [the defendant's] allegedly unlawful scheme to reduce solar-energy competition"); *Northbay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 236 (9th Cir. 2020) (explaining that party that "was neither a consumer nor a competitor" in relevant market "nonetheless f[ell] within *McCready*'s holding because its injuries were 'inextricably intertwined' with an injury" to market participant); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 374, 376 (9th Cir. 2003) (concluding that district court erred by "limit[ing] a purchaser/consumer's actionable antitrust injury to situations where the purchaser/ consumer has made or intends to make purchases in the relevant market," referring to "this understanding of antitrust injury [as] too restrictive," and noting "parallels" to the Supreme Court's decision in *McCready*").

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

shipped via FBA. Their injury is direct because, as a result of Amazon's tying arrangement, they paid supracompetitive prices every time they purchased an FBA-shipped item through the Buy Box. *See, e.g.*, Compl. at ¶¶ 27–32, 37, 116–17, 124–41. Thus, the harm to Plaintiffs is not speculative: that Plaintiffs paid and continue to pay higher prices because of Amazon's unlawful tying arrangement follows from fundamental economic principles. *See id.* And as explained in § III.A.3 below, there is minimal risk of duplicative recovery, and the apportionment of damages can be determined by economic experts, as in most antitrust cases.

In sum, Plaintiffs have adequately alleged an antitrust injury that stems directly from Amazon's unlawful conduct: "The plaintiffs seek to hold [Amazon] to account [for] engag[ing] in unlawful anticompetitive conduct that harms consumers who purchase from [Amazon]. That is why we have antitrust law." *Pepper*, 139 S. Ct. at 1525.

### 3. That third-party Sellers may have their own antitrust claims against Amazon does not create a risk of duplicative recovery.

Amazon contends that, because its violation of the antitrust laws also harmed third-party Sellers, there is a "risk of duplicative recoveries" and a "danger of complex apportionment of damages" warranting the dismissal of Plaintiffs' claims. Mot. to Dismiss at 12. Here, too, the Supreme Court's recent decision in *Pepper* is instructive and undermines Amazon's argument: "Basic antitrust law tells us that the mere fact that an antitrust violation produces two different classes of victims hardly entails that their injuries are duplicative of one another." *Pepper*, 139 S. Ct. at 1525 (citation and internal quotation marks omitted).

Just as "Apple's alleged anticompetitive conduct may leave Apple subject to multiple suits by different plaintiffs" (namely, consumers and third-party app developers), *id.*, so too Amazon's alleged anticompetitive conduct leaves it subject to multiple suits by different plaintiffs: consumers and third-party Sellers. Just like the plaintiffs in *Pepper*, Plaintiffs here

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

seek damages based on the difference between the price they paid and the competitive price (absent the unlawful tying arrangement). *Id.* A suit by the Sellers would seek lost profits that they could have earned but for the unlawful tying arrangement. *Id.*

Expert testimony may be necessary in either case, "[b]ut that is hardly unusual in antitrust cases." *Id.*; *see, e.g.*, *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 801 F.2d 908, 911 (7th Cir. 1986) (Posner, J.) ("[I]n a great deal of complex litigation, including most patent and antitrust litigation, expert testimony is a practical if not legal necessity."); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2020 U.S. Dist. LEXIS 5440, at *21 (N.D. Cal. Jan. 10, 2020) ("[T]he Ninth Circuit has recognized that expert testimony or similar evidence may in some circumstances be necessary to show antitrust damages . . . .").

**B.**    **Plaintiffs' Complaint states a tying claim under Section 1 of the Sherman Act.**

Amazon advances five grounds for dismissing Plaintiffs' Section 1 claim. Each one of the grounds raised by Amazon mischaracterizes either Plaintiffs' allegations or the relevant case law.

**1.**    **Placement in the Amazon Buy Box is a product under the antitrust laws, one that is distinct and separate from Fulfillment by Amazon.**

Plaintiffs have sufficiently pleaded that the Buy Box and FBA are two separate products by plausibly alleging that the products exist in separate markets. *See Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, No. 21-cv-03496-VC, 2021 U.S. Dist. LEXIS 226077, at *9 (N.D. Cal. Nov. 23, 2021) ("In an antitrust case, 'whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items.' To plead the existence of two products, the plaintiff must allege facts from which the court can plausibly infer that the products exist in separate markets." (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 19 (1984)). The Buy Box exists in the market for product placement in retail e-commerce, while FBA

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

exists in the market for logistics services—warehousing, packing, and shipping. These are separate markets and—absent Amazon's unlawful tying arrangement—Sellers and consumers would use cheaper and more efficient logistics services. *See, e.g.*, Compl. ¶ 81.

Amazon asserts that the Buy Box is not a product because "Plaintiffs do not and cannot allege that the purported tying 'product'—placement in the . . . 'Buy Box'—is something that can be purchased . . . ." Mot. to Dismiss at 14. Amazon's assertion is false, as Plaintiffs *do* allege that Sellers purchase Buy Box placement—albeit covertly—by alleging that placement in the Buy Box is being sold "through the tying arrangement itself." *Nobody in Particular Presents, Inc. v. Clear Channel Communs., Inc.*, 311 F. Supp. 2d 1048, 1093–94 (D. Colo. 2004); *see* Compl. ¶¶ 20, 22–24, 39, 76–82, 84, 91–97. That the price of Buy Box placement (the tying product) is hidden within the price of Fulfillment by Amazon (the tied service) is irrelevant, as a defendant—here Amazon—"may seek to evade price or other regulatory controls in the tying product market by hiding the inflated price in the tied product's price." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 476 (3d Cir. 1992) (citation omitted).

Amazon nonetheless contends that placement in the Buy Box cannot be a distinct product for purposes of a tying claim because "[c]ourts in this Circuit and others flatly reject attempts to cast integrated features of technological platforms as tying products." Mot. to Dismiss at 14. None of the three cases cited by Amazon supports this contention. In each of the cases, a court declined to recognize the alleged products as distinct because—unlike Buy Box placement and FBA—the tying product and the tied product were ***both*** so integrated into a technology platform as to be inseparable. For example, in *Epic Games, Inc. v. Apple*, the plaintiff alleged that the tying product was "the iOS app distribution platform" and the tied product was the in-app payment system, which was "integrated into the iOS device" and was "but one component of the full suite of services offered by iOS and the App Store." No. 4:20-cv-05640-YGR, 2021 U.S. Dist. LEXIS 172303, at *275–77 (N.D. Cal. Sep. 10, 2021).

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

The court therefore concluded that the purportedly tied products were part of "a single platform which cannot be broken into pieces to create artificially two products." *Id.* at *277.[8]

In contrast to those cases, the products here—Buy Box placement and FBA—are distinct and separate. As Amazon acknowledges: the Buy Box "is the customer-facing result of an algorithm," Mot. to Dismiss at 14, while FBA is a "logistics network," *id.* at 1, 4.

The Court also should reject Amazon's assertion that a product's placement in the Buy Box is immune from antitrust scrutiny, an assertion for which Amazon cites no authority. *Id.* at 14–15. Nor does Amazon attempt to explain how—for purposes of relevant-market analysis—product placement is distinguishable from advertising, which has been recognized as a relevant market in numerous cases. *See, e.g.*, *Nobody in Particular Presents*, 311 F. Supp. 2d at 1088–90 (concluding at summary judgment that plaintiff "ha[d] demonstrated sufficient evidence for a reasonable jury to find that" plaintiff had properly defined relevant market as "rock radio advertising and promotional support" (emphasis added)); *RSA Media, Inc. v. AK Media Grp., Inc.*, CIVIL ACTION 97-11250-RWZ, 2000 U.S. Dist. LEXIS 21379 (D. Mass. Oct. 3, 2000) (recognizing as valid relevant market the market for billboard advertising in Metro Boston); *AD/SAT v. Associated Press*, 920 F. Supp. 1287, 1300 (S.D.N.Y. 1996) ("determin[ing] that the relevant market in th[e] case [was] the delivery of advertisements by any means").

---

[8] The other two cases cited by Amazon involve similar circumstances. In *Coronavirus Reporter v. Apple Inc.*, the court concluded that "iOS notary stamps," "iOS application loaders," and "iOS userbase" were not markets for products but rather "integrated features of Apple's app approval process" that "a developer may access and use when a developer's app is approved for distribution on the App Store." No. 21-cv-05567-EMC, 2021 U.S. Dist. LEXIS 249564, at *10 (N.D. Cal. Nov. 30, 2021). And in *Service & Training, Inc. v. Data General Corp.*, the alleged tying product was "a diagnostic software program" called MV/ADEX, and the alleged tied product was "computer maintenance and repair services." 737 F. Supp. 334, 335, 342 (D. Md. 1990). The court concluded that the diagnostic program and the "maintenance and repair service are inextricably bound together" because the program was "merely one feature of [an] integrated and unified 'product'—computer servicing." *Id.* at 343.

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 14 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## 2. Plaintiffs have adequately alleged an unlawful, anticompetitive tie between Sellers' placement in the Buy Box and their purchase of FBA.

Amazon maintains that Plaintiffs have not alleged a "legally cognizable tie" between Buy Box placement and FBA because Amazon's deliberately anticompetitive technical design—here, the design of the Buy Box algorithm to favor Sellers who purchase FBA—can *never*, as a matter of law, be a basis for a claim of unlawful tying. Mot. to Dismiss at 15–16. Amazon's position is without merit, as product design and "changes in product design are not immune to antitrust scrutiny." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 998 (9th Cir. 2010). None of the authorities cited by Amazon supports its sweeping claim of a technology exemption from the antitrust laws. For example, Amazon cites *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983), for the proposition that, as a matter of law, there can be no tying claim when the tie involves technological design. Mot. to Dismiss at 15, 20. But the Ninth Circuit has rejected this reading of *Foremost Pro Color. See Aerotec Internat'l, Inc. v. Honeywell Internat'l, Inc.*, 836 F.3d 1171, 1175 (9th Cir. 2016) (noting that *Foremost Pro Color* "reject[ed] a claim of a 'technological tie' but acknowledge[ed] the possibility of such a claim").

Generally, courts scrutinize product design when "the design choice discourages distribution of competitor's product, while not making the product more attractive to consumers." *Nespresso United States v. Ethical Coffee Co.*, No. 16-194-GMS (D. Del. Sept. 7, 2016) (refusing to dismiss a Section 2 claim based on design of espresso machine capsule housing to exclude competitors from providing competitive capsules); *see also Abbott Labs v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408, 422 (D. Del. 2006) (concluding that design changes that remove free consumer choice in the market are subject to antitrust scrutiny); *United States v. Microsoft Corp.*, 253 F.3d 34, 65 (D.C. Cir. 2001) (holding that Microsoft's design choice to integrate its web browser and operating system was subject to antitrust scrutiny because the integration did not make the web browser more attractive to consumers but just discouraged rival products).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Amazon's decision to place in the Buy Box offers from Sellers who purchase FBA is not an immutable technical feature of Amazon's platform but rather an instrument to coerce Sellers into paying for FBA. Amazon demonstrated that this feature is not an essential aspect of its algorithm when it temporarily changed the algorithm in 2020 so that the Buy Box would stop favoring Sellers who paid for FBA. Compl. ¶¶ 110–14. In short, Plaintiffs allege that Amazon's design choice discourages the use of competitors' logistic services, without making the Buy Box more useful to consumers.[9] At the pleading stage, these plausible allegations must be credited.

### 3. Plaintiffs adequately allege that Amazon has market power in two tying markets.

Amazon incorrectly states that the sole market definition alleged by Plaintiffs is "favorable product placement on Amazon's website, and on the internet more broadly." Mot. to Dismiss at 16 (citation and internal quotation marks omitted). Amazon completely ignores Plaintiffs' allegation that Amazon "has a monopoly level of market power in two markets (the tying-product markets): (i) the online retail market in the United States (also referred to as the retail e-commerce market) . . ., and (ii) the market for placement in Amazon's Buy Box, over which Amazon has complete control." Compl. ¶ 185.

Amazon likewise ignores that another judge in this district recently concluded that the very same market proposed by Plaintiffs here—the U.S. retail e-commerce market—is a valid market for purposes of surviving a motion to dismiss by Amazon. *See Frame-Wilson v. Amazon.com, Inc.*, No. 2:20-cv-00424-RAJ, 2022 U.S. Dist. LEXIS 44109, at *25–28 (W.D. Wash. Mar. 11, 2022) (Jones, J.) ("Plaintiffs identify the market at issue as the U.S. retail

---

[9] *See, e.g.*, Compl. ¶ 23 ("[I]f two Sellers—one of whom pays for Amazon's Fulfillment services while the other doesn't—offer the same product on Amazon.com, the Seller who pays Amazon for Fulfillment services will 'win' the Buy Box and make the sale, even if the competing Seller offers a lower total price and faster, more reliable shipping."); *id.* ¶ 92 ("If it weren't for the algorithm, if it weren't for the fifty-plus pressure points that Amazon is placing on [Sellers], FBA wouldn't be attractive.").

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 16 –

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

ecommerce market. . . . Plaintiffs have provided sufficient 'practical indicia' to determine, at minimum, that the alleged submarkets are not necessarily facially unsustainable. . . . The validity of the relevant market is a factual question reserved for a jury, and the Court makes no such determination here." (citations omitted)). The court in *Frame-Wilson* also concluded that plaintiffs adequately alleged that Amazon possesses market power in the retail e-commerce market by alleging—as Plaintiffs do here—that Amazon "currently controls 70% of all online marketplace sales." *Id.* at *28 (internal quotation marks omitted); *see* Compl. ¶ 4, 185.

The other market alleged by Plaintiffs—the market for placement in Amazon's Buy Box, over which Amazon has complete control—is a cognizable single-brand market. As a judge in this district recently explained: "It is clear that an antitrust plaintiff may base its claims on a single-product relevant market." *Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 U.S. Dist. LEXIS 214693, at *15 (W.D. Wash. Nov. 16, 2020) (Robart, J.) (citing *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 456–59 (1992); *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1048 (9th Cir. 2008)). Plaintiffs' allegation that Amazon has "complete control" over the market for placement in the Buy Box is sufficient to plead dominant market share. *See, e.g.*, *Alivecor, Inc. v. Apple Inc.*, No. 21-cv-03958-JSW, 2022 U.S. Dist. LEXIS 49881, at *21–22 (N.D. Cal. Mar. 21, 2022) ("AliveCor alleges that Apple commands one hundred percent of the market for heart rate analysis apps on watchOS devices based on Apple's 'complete control over both watchOS and distribution for watchOS apps.' . . . At this stage, these allegations are sufficient to plead a dominant market share." (citations omitted)).

4. **Plaintiffs' Complaint contains detailed—and supported—allegations of how Amazon coerced Sellers into purchasing FBA, the tied product.**

Amazon contends that Plaintiffs fail to allege "that any purchaser was 'coerced' into purchasing the tied product [FBA]." Mot. to Dismiss at 16. This contention is without

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

merit. Plaintiffs' Complaint includes allegations detailing how Amazon used its market power in the tying markets to coerce Sellers to use FBA—the tied product—and the onerous effects that this tying arrangement had on Sellers and consumers. For example:

> To force Sellers to switch to its Fulfillment services, Amazon conditioned a Seller's access to the Prime Badge—and with it, placement in the Buy Box—on a Seller's purchasing Fulfillment by Amazon.

> As documented in a report resulting from a year-long investigation by a U.S. House Subcommittee ("House Subcommittee Report"), Sellers need a Prime Badge to "maintain a favorable search result position, to reach Amazon's more than 112 million Prime members, and to win the Buy Box," and purchasing "FBA is functionally the *only* way for sellers to get the Prime Badge for their product listings."

> . . .

> Amazon's anticompetitive conduct harms Sellers because it permits Amazon to charge "increased fees for compulsory fulfillment . . . services." As one Seller reported in a letter sent to federal lawmakers in 2019, "Amazon raised logistics fees by 20% over the [previous] four years until they cost as much as *35% more* than competing services.

> . . .

> [By a conservative estimate,] Amazon's violations of the antitrust laws overcharged consumers by approximately $5 billion in 2020 alone.

Compl. ¶¶ 20–21, 25–26, 37; *see also id.* ¶¶ 18–19, 22–24, 27–32, 34–36, 41, 62–68, 75–84, 91–150.

Amazon also argues that no coercion could have occurred because Plaintiffs "allege no facts suggesting a contractual requirement or direct condition requiring sellers to [purchase FBA]." Mot. to Dismiss at 18. This argument misstates the legal standard for coercion in the tying context: "[T]ying conditions need *not* be spelled out in express contractual terms to fall within the Sherman Act's prohibitions. A showing of an onerous effect on an appreciable number of buyers coupled with a demonstration of sufficient economic power in the tying market is sufficient to demonstrate coercion." *Packaging Sys. v.*

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1085 (C.D. Cal. 2017) (emphasis added) (internal quotation marks omitted) (quoting *Aerotec Int'l*, 836 F.3d at 1179; *Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977)).

**5. Plaintiffs' allegations of effects in the tied market state a tying claim under both the per se and rule-of-reason standards.**

Regarding market effects, to state a per se tying claim, Plaintiffs need allege only "that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *See, e.g., Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 n.7 (9th Cir. 2012). Plaintiffs have satisfied this standard by alleging, among other things, that "[a]pproximately $163 billion products are sold through Amazon's website every year," that "[t]he majority of those products are shipped through Amazon's Fulfillment services," and that "[t]he company's revenues from its logistics business grew from approximately $3 billion in 2014 to $29 billion in 2019." Compl. ¶¶ 93, 178.

Plaintiffs' allegations also are sufficient to state a tying claim under the rule of reason. Generally, the test for harm to competition is whether consumer welfare has been harmed such that there has been a decrease in allocative efficiency and an increase in price. *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir.1995). Plaintiffs' allegations go well beyond meeting this standard. Plaintiffs allege that Amazon's tying arrangement forecloses competition in the vast majority of the market for logistics services for Amazon purchases and leads to supracompetitive fees paid by Sellers. *See* Compl. ¶¶ 36, 84, 94 (alleging that 73% of all Sellers, and 85% of the top 10,000 sellers, use FBA even though FBA fees have risen steeply and are much higher than those of competitors). Plaintiffs allege that Amazon's policy excludes competitors in the logistics market and causes sellers to forgo purchasing logistics services from lower-priced competitors offering logistics services of a higher quality. *See, e.g., id.* ¶ 81 (alleging that Sellers were coerced into purchasing FBA even though FBA services were of a lower quality than those offered by competitors); *id.* ¶ 25

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

(alleging that Amazon raised logistics fees by 20% over four years until it charged 35% more than competitors); *id.* ¶¶ 116–23 (listing examples showing that Buy Box offerings shipped through FBA frequently do not have the cheapest or fastest shipping). As for the effect on consumers, Plaintiffs allege that Amazon has overcharge consumers by approximately $5 billion in 2020 alone because its unlawful tying arrangement resulted in supracompetitive shipping costs. *Id.* ¶ 37.

**C.    Plaintiffs' allegations state a claim under Section 2 of the Sherman Act.**

Amazon argues that Plaintiffs do not state a claim under Section 2 of the Sherman Act because "they allege mere 'monopoly leveraging,' which is not anticompetitive conduct, and because they do not . . . show monopoly power in the relevant market of logistics and fulfillment." Mot. to Dismiss at 19. This argument fails because, contrary to Amazon's representations, the Ninth Circuit *does* recognize claims of monopoly leveraging when, as here, a monopolist uses its monopoly power in one market in an attempt to achieve a monopoly in a second, target market. Indeed, the very case that Amazon cites in support of its position, *Cost Management Services, Inc. v. Washington Natural Gas Co.,* holds that monopoly leveraging "remains a viable theory under Section 2." 99 F.3d 937, 951 (9th Cir. 1996).

Under *Cost Management Services*, Plaintiffs have stated a Section 2 claim by alleging that Amazon used its power in one market—defined as either the retail e-commerce market or the market for placement in the Buy Box (Compl. ¶ 185)—to attempt to monopolize the U.S. market for logistics services for retail goods (*id.* ¶ 188). *See Cost Mgmt. Servs.*, 99 F.3d at 952 ("CMS has alleged that WNG has used its monopoly power in the gas delivery market in an attempt to monopolize the market for gas sales. Accordingly, CMS has alleged conduct which may be reached 'under the doctrine of attempted monopoly,' and it may proceed on this theory." (citation omitted)). As *Cost Management Services* show, Amazon is wrong to assert that Plaintiffs must "allege monopoly power . . . in the [tied] logistics market" to state a claim under Section 2. Mot. to Dismiss at 20.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Amazon has monopoly-level power in the tying markets: the retail e-commerce

2  market, where it controls 65 to 70% of all marketplace sales and in the market for placement

3  in the Buy Box, over which Amazon has 100% control. Compl. ¶ 185. Amazon uses this

4  monopoly-level power in the tying market to force Sellers to purchase FBA, so that it can

5  gain monopoly-level power in the logistics services market. *Id.* ¶ 180.

6  Amazon's efforts to leverage its market power in e-commerce to acquire a monopoly

7  in the market for logistics services has shown a dangerous probability of success given that

8  Amazon has already overtaken the U.S. Postal Service in the number of parcels it delivers

9  and is expected to surpass UPS and FedEx in logistics market share by 2022. *Id.* ¶ 192.

10  Moreover, Amazon's conduct in willfully seeking a monopoly in the logistics market has led

11  to increased prices for consumers. *Id.* ¶ 194.[10]

12  The other cases Amazon relies on also find monopoly leveraging claims viable when

13  a monopolist uses its monopoly power in an attempt to obtain a monopoly in another target

14  market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991)

15  ("Even in the two-market situation, a plaintiff cannot establish a violation of Section 2

16  without proving that the defendant used its monopoly power in one market to obtain, or

17  attempt to attain, a monopoly in the downstream, or leveraged, market."); *Image Tech.*

18  *Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997) (same).

19  In sum, Plaintiffs' allegations state a claim under Section 2, and Amazon's attempt

20  to dismiss that claim should be denied.

21  **D.  None of Plaintiffs' claims is time-barred.**

22  Amazon's claim that "[m]ost of Plaintiffs' claims are time-barred" is false. Mot. to

23  Dismiss at 21. Consumers were injured each time they purchased an item through

24

---

25  [10] Amazon also asserts that Plaintiffs are merely complaining about "the introduction of technologically related products," which is not anticompetitive under Section 1, and therefore, cannot violate Section 2 of the Sherman Act. Mot. to Dismiss at 20. This argument is thoroughly

26  addressed and rebutted above. *See supra* at § III.B.2.

Amazon's Buy Box and had their order fulfilled by Amazon. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) ("[E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act."). Amazon does not, nor could it, dispute that all claims that accrued on or after July 26, 2017—4 years before the commencement of this action, *see* Dkt. #1, Class Action Compl.—are not time-barred. *See* 15 U.S.C. § 15b (providing four-year statute of limitations for actions based on violations of Sherman Act). Over half of the proposed class period (January 1, 2013 to the present) is after July 26, 2017, and none of Amazon's timeliness arguments applies to harms that occurred on or after that date.

**1.    Claims based on injuries suffered outside the statute of limitations are tolled by the discovery rule.**

"The general *federal* rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Trotter v. Int'l Longshoremen's & Warehousemen's Union, Local 13*, 704 F.2d 1141, 1143 (9th Cir. 1983). Courts have found that this rule "applies broadly to federal litigation, including Sherman Act claims." *Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058, 1077 (N.D. Cal. 2014); *see also In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (concluding that, "in the absence of a contrary directive from Congress," the antitrust statute of limitations "is qualified by the discovery rule"). While some courts have applied a "pure accrual" rule to antitrust claims, such a rule permits anticompetitive harms that can never be redressed because they are not readily ascertainable by consumers.[11]

---

[11] Plaintiffs note that if the Court concludes that fraudulent-concealment tolling applies to Plaintiffs' claims, the Court need not resolve the question whether "discovery rule" tolling exists in this circumstance. *See In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 900–01 (N.D. Cal. 2017) (noting "split of authority" and not deciding discovery rule issue because fraudulent concealment exception applied).

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Plaintiffs allege that they had no reason to know of Amazon's tying scheme or of the

harm it caused to consumers before at least November 8, 2019, when major news outlets

reported that a Seller had accused Amazon of forcing him and other Sellers to use

Amazon's expensive logistics services, resulting in higher prices for consumers. Compl.

¶¶ 163–66. These allegations are sufficient for the Court to conclude at the pleading stage

that discovery tolling applies and that therefore none of the claims from the relevant period

(January 1, 2013 to the present) are time-barred.

### 2. Fraudulent-concealment tolling applies to Plaintiffs' claims.

"A statute of limitations may be tolled if the defendant fraudulently concealed the

existence of a cause of action in such a way that the plaintiff, acting as a reasonable person,

did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060

(9th Cir. 2012); *see also Westinghouse Elec. Corp. v. Pac. Gas & Elec. Co.*, 326 F.2d 575, 576–80

(9th Cir. 1964) (explaining rationale for applying fraudulent concealment tolling to Clayton

Act claims). Determining whether a defendant fraudulently concealed the existence of an

antitrust claim is a fact-intensive inquiry. *Fenerjian*, 72 F. Supp. 3d at 1078; *In re Packaged*

*Seafood Prods. Antitrust Litig.*, 2022 WL 789177, at *3 (S.D. Cal. Feb. 7, 2022). For this

reason, "[i]t is often inappropriate to reject fraudulent concealment allegations at the

pleadings stage." *Fenerjian*, 72 F. Supp. 3d at 1078; *see also In re Capacitors Antitrust Litig.*,

106 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015).

Plaintiffs' allegations regarding fraudulent concealment are sufficient to survive

Amazon's motion to dismiss. Plaintiffs allege that Amazon represents that the purpose of

the Buy Box is "[t]o give customers the best possible shopping experience" and that

placement in the Buy Box is based on "performance-based requirements." Compl. ¶ 100.

This representation, however, was affirmatively misleading—Amazon was giving strong

preference for the Buy Box to offers from Sellers who purchased Fulfillment by Amazon,

even when the shipping time for the offer was longer and the price was higher. *Id.* ¶¶ 106–

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

09. In other words, Amazon affirmatively told consumers that the Buy Box is the "best" offer, while giving preference for Buy Box placement to Sellers who paid for FBA, regardless of what the best deal was for the consumer. Amazon's affirmative statements to consumers regarding its drive to reduce prices also misled consumers into believing that the Buy Box gave them the best price and reflected Amazon's purported commitment to low prices. *Id.* ¶¶ 170–72. Plaintiffs allege that Amazon's tying scheme actually led to *higher* prices for items purchased through the Buy Box. *Id.* ¶ 172.

Amazon contends that consumers should have been aware of its tying arrangement in 2013 through 2016 because Amazon communicated the tying arrangement to Sellers. Mot. to Dismiss at 23. But Amazon's representations to Sellers regarding how they can win the Buy Box did not inform the general consuming public that Amazon's tying arrangement unlawfully inflated prices.

## IV. CONCLUSION

The allegations in Plaintiffs' Complaint are sufficient to (1) establish that Plaintiffs have antitrust standing, (2) state claims under both Sections 1 and 2 of the Sherman Act, and (3) conclude at the pleading stage that tolling applies. Amazon fails to raise a single legitimate reason for dismissing any portion of Plaintiffs' Complaint. Accordingly, Plaintiffs respectfully request that the Court deny Amazon's motion to dismiss in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 19th day of May, 2022.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
    Adrienne D. McEntee, WSBA #34061
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 24 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Kenneth A. Wexler, *Pro Hac Vice*
Email: kaw@wbe-llp.com
Justin N. Boley, *Pro Hac Vice*
Email: jnb@wbe-llp.com
Zoran Tasić, *Pro Hac Vice*
Email: zt@wbe-llp.com
WEXLER BOLEY & ELGERSMA LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Daniel E. Gustafson, *Pro Hac Vice*
Email: dgustafson@gustafsongluek.com
Daniel C. Hedlund, *Pro Hac Vice*
Email: dhedlund@gustafsongluek.com
Michelle J. Looby, *Pro Hac Vice*
Email: mlooby@gustafsongluek.com
Daniel J. Nordin, *Pro Hac Vice*
Email: dnordin@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Brett Cebulash, *Pro Hac Vice*
Email: bcebulash@tcllaw.com
Kevin Landau, *Pro Hac Vice*
Email: klandau@tcllaw.com
Evan Rosin, *Pro Hac Vice*
Email: erosin@tcllaw.com
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703

*Attorneys for Plaintiff and the Proposed Class*

PLAINTIFFS' RESPONSE OPPOSING
DEFENDANT'S MOTION TO DISMISS
Case No. 2:21-cv-996-RSM

– 25 –

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com