The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGELA HOGAN and ANDREA SEBERSON, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, Inc.,<br><br>Defendant. | No. 2:21-cv-00996 RSM<br><br>**DEFENDANT AMAZON.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>NOTE ON MOTION CALENDAR:<br>June 24, 2022 |

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................... 2

I. Plaintiffs' opposition confirms they lack antitrust standing. ........................................... 2

    A. Plaintiffs do not purchase FBA—directly or indirectly. ..................................... 2

    B. *Pepper*'s allegations are not analogous to those made by Plaintiffs. .................... 4

    C. Plaintiffs lack standing under *AGC*. .................................................................... 5

II. Plaintiffs fail to address the fatal defects in their Section 1 tying claim .......................... 7

    A. Plaintiffs still do not identify separate, tied products. ........................................ 7

        1. Plaintiffs fail to show the Featured Offer is separately for sale. ............... 7

        2. Plaintiffs do not dispute that the Featured Offer is an integrated component of Amazon's website. ............................................................ 8

    B. Plaintiffs fail to demonstrate that so-called "technological ties" can be unlawful under either the *per se* rule or the rule of reason. ................................. 8

    C. Plaintiffs do not define a proper tying market. ..................................................... 9

    D. Plaintiffs allege no coercion ................................................................................ 10

    E. Plaintiffs allege no anticompetitive effects in the tied product market. ............. 10

III. Plaintiffs' Section 2 monopolization claim fails on multiple grounds. .......................... 11

IV. Claims that accrued before July 26, 2017 are time barred. ............................................. 12

CONCLUSION ........................................................................................................................ 12

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Federal Cases**                                                            **Page(s)**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) .................................................................................8, 9, 10

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
   948 F.2d 536 (9th Cir. 1991) ................................................................................................11

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019) ..........................................................................................1, 4, 5, 6

*Apple iPod iTunes Antitrust Litig.*,
   2009 WL 10678931 (N.D. Cal. May 15, 2009) ....................................................................9

*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019) ................................................................................................3

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters* (*AGC*),
   459 U.S. 519 (1983)..........................................................................................................2, 5

*Beeman v. Mayorkas*,
   2021 WL 3207414 (W.D. Wash. July 29, 2021) ....................................................................3

*Blue Shield of Va. v. McCready*,
   457 U.S. 465 (1982)................................................................................................................6

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*,
   613 F.2d 727 (9th Cir. 1979) ................................................................................................10

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
   72 F. Supp. 3d 1012 (N.D. Cal. 2014) ................................................................................11

*City of Oakland v. Oakland Raiders*,
   20 F.4th 441 (9th Cir. 2021) ..................................................................................................5

*CollegeNet, Inc. v. Common Application, Inc.*,
   355 F. Supp. 3d 926 (D. Or. 2018) ......................................................................................11

*Coronavirus Reporter v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ......................................................................8

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
   99 F.3d 937 (9th Cir. 1996) ..................................................................................................11

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*,
   24 F.4th 1262 (9th Cir. 2022) ................................................................................................7

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Epic Games, Inc. v. Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021) ..............................................................................8

*Fenerjian v. Nongshim Co.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) ............................................................................12

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) .........................................................................................8, 9

*Frame-Wilson v. Amazon.com, Inc.*,
    2022 WL 741878 (W.D. Wash. Mar. 11, 2022) ............................................................10

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) .............................................................................................7

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ........................................................................................12

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................................................1, 5

*In re Copper Antitrust Litig.*,
    436 F.3d 782 (7th Cir. 2006) ..........................................................................................12

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) ..............................................................................7

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) .........................................................................................................7, 11

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) .......................................................................................................12

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ..........................................................................................9

*Nobody in Particular Presents, Inc. v. Clear Channel Comm'ns., Inc.*,
    311 F. Supp. 2d 1048 (D. Colo. 2004) .............................................................................8

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    838 F. App'x 231 (9th Cir. 2020) .....................................................................................7

*Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) .......................................................................................6, 7

*Packaging Sys. v. PRC-Desoto Int'l, Inc.*,
    268 F. Supp. 3d 1071 (C.D. Cal. 2017) ..........................................................................10

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Patt v. Antech Diagnostics, Inc.*,
    2020 WL 5076970 (C.D. Cal. May 18, 2020) ........................................................................... 11

*Picciano v. Clark Cnty.*,
    2022 WL 36893 (W.D. Wash. Jan. 4, 2022) ............................................................................ 11

*Reilly v. Apple Inc.*,
    2022 WL 74162 (N.D. Cal. Jan. 7, 2022) ................................................................................. 9

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
    2021 WL 5474898 (N.D. Cal. Nov. 23, 2021) ......................................................................... 7

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*,
    959 F.2d 468 (3d Cir. 1992) ..................................................................................................... 8

*Trotter v. Int'l Longshoremen's & Warehousemen's Union, Loc. 13*,
    704 F.2d 1141 (9th Cir. 1983) ................................................................................................ 12

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ............................................................................................. 7, 9

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................................................................... 11

REPLY IN SUPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Confronted with the many defects in their Amended Complaint, Plaintiffs resort in their Opposition, Dkt. No. 35 ("Opposition" or "Opp.") to mischaracterizing their own allegations, changing their theories of liability, and citing materials extrinsic to their Amended Complaint. But even were these tactics permissible, nothing Plaintiffs say fixes the fatal flaws that require dismissal.

*First*, Plaintiffs lack antitrust standing. Their argument that end consumers somehow "purchased" FBA cannot be reconciled with the Amended Complaint, which makes clear that FBA is a set of services available only to third-party sellers. And even were Plaintiffs purchasers of FBA services, they would not be *direct* purchasers. While Plaintiffs seek to liken this case to *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), they are nothing like iPhone users directly purchasing an allegedly monopolized product—an app—by paying Apple. Here, Plaintiffs assert they purchased consumer products, and thus indirectly "purchased" a *separate* product—the warehousing and logistics services that *sellers* select and pay for to manage inventory and fulfill orders. That theory would eliminate the direct-purchaser rule established by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and flies in the face of *Pepper* itself, which made clear that it was simply applying the "bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." 139 S. Ct. at 1520 (emphasis in original). And Plaintiffs do not even attempt to explain how their causation theory could satisfy the "one-step" rule that independently prohibits recovery in private antitrust actions based upon alleged conduct far removed from the purported harm.

*Second*, Plaintiffs cannot overcome the problem that undoes their tying claim: The asserted "tying product"—winning the Featured Offer—is no product at all, as it cannot be purchased by anyone. Nor do Plaintiffs rebut any of Amazon's other arguments: "technological ties" are not actionable under Section 1, Plaintiffs' own allegations show no one was "coerced" into purchasing FBA, and none of the harm Plaintiffs allege occurred in the tied product market.

*Third*, Plaintiffs ignore the law in this Circuit that monopoly leveraging cannot on its own violate Section 2, and that an entity with 20% market share in the relevant market cannot be liable even for attempted monopolization (a claim not actually advanced in the Amended Complaint).

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Finally*, even if the Amended Complaint did not suffer from these insurmountable failings, Plaintiffs' claims would largely be time-barred, because a pure accrual rule applies to these claims and Plaintiffs do not come close to alleging fraudulent concealment.

These flaws are irremediable; the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.   Plaintiffs' opposition confirms they lack antitrust standing.

Plaintiffs insist they are "direct purchasers" (Opp. 6–8), but they do not explain: "of *what*?" The Amended Complaint pivots on its allegation that Amazon coerced third-party sellers into purchasing overpriced FBA services, harming competition in an alleged market for logistics. (¶¶ 20, 33, 41, 175, 177–178, 188–189). But Plaintiffs are purchasers of consumer goods from those sellers; they did not purchase FBA. Plaintiffs' theory is that third-party sellers "pass on" the costs of FBA to end consumers. (¶¶ 129–136; Opp. 1). This is precisely the theory of damages the Supreme Court rejected in *Illinois Brick*, and it is not remotely analogous to the allegations the Supreme Court allowed to proceed in *Pepper*. And beyond the direct-purchaser rule, the Opposition fails to engage with the standing analysis required by *Associated General Contractors of California v. California State Council of Carpenters* (*AGC*), 459 U.S. 519 (1983), which also shows that Plaintiffs lack antitrust standing. (*See* Motion, Dkt. No. 26 ("Mot.") 6–8, 10–12).

#### A.   Plaintiffs do not purchase FBA—directly or indirectly.

The Amended Complaint is replete with allegations confirming that Plaintiffs do not purchase FBA. (E.g., ¶¶ 24–26, 42–43, 129–136, 151, 182, 194). The Opposition runs away from these allegations, but Plaintiffs simply cannot maintain the fiction that they purchased FBA. Plaintiffs admit FBA is a bundle of "warehousing, packing, and shipping services" (Opp. 2), which competes in an alleged market for retail logistics (*id.* at 12–13). But when Plaintiffs describe what they purchased from Amazon, they do not allege they bought business logistics services at all; instead, they "purchase[d] Buy Box *items* that are shipped via FBA." (Opp. 1; *see also id.* at 7 ("the consumer is buying the item")). Plaintiffs drop any mention of (and certainly do not claim they purchased) FBA warehousing, inventory management, and packaging—services sold to

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sellers that are separate from the retail products Plaintiffs bought. Indeed, the Amazon Services Business Solutions Agreement (the "BSA"), submitted with Plaintiffs' Opposition, confirms that third-party sellers—not end consumers—"pay [Amazon] the applicable fees" for "[h]andling and [s]torage." Terrell Decl. (Dkt. No. 36), Ex. 1 § F-9.1.[1] Plaintiffs' façade slips once more when they assert that "***Sellers*** purchase[d] Buy Box placement" by paying "the price of [FBA]." (Opp. 13). This admission, like the Amended Complaint, makes clear that third-party sellers, not Plaintiffs, purchase FBA. Under *Illinois Brick*, that resolves the case: Plaintiffs lack standing.

Faced with this, the Opposition pivots to a new theory that consumer-side shipping charges somehow constitute purchases of FBA. (Opp. 7–9). But this cannot be squared with the Amended Complaint, which makes clear that Plaintiffs did not pay for shipping. Both Plaintiffs are Amazon Prime members (¶¶ 42–43), and therefore receive "***free***, fast shipping" of any product with a Prime Badge (¶ 6). And according to the Amended Complaint, all products shipped through FBA receive the Prime Badge. (¶ 80(iii); *see also* ¶¶ 19–20). Further, Plaintiffs' claims pertain only to items purchased through the Featured Offer (¶¶ 151, 182, 194), and, at least according to the Amended Complaint, "only products with the Prime Badge are offered through the [Featured Offer]." (¶ 24). Thus, for every relevant sale, Plaintiffs allege they purchased a Prime-badged product and received free shipping. Indeed, every example the Amended Complaint provides of the consumer-side shipping cost for items in the Featured Offer shows that the consumer received "FREE delivery." (¶¶ 120–122). Despite the Opposition's assertions about "FBA shipping charges . . . paid directly by the consumer" (Opp. 5), the Amended Complaint reveals that Plaintiffs paid no such charges.

Plaintiffs seek to analogize FBA to the commissions on apps in *Pepper*, arguing that FBA resulted in a markup on the price of products purchased by consumers. (Opp. 9). Unlike in *Pepper*, however, Plaintiffs here allege a tying claim that requires the Featured Offer and FBA to be

---

[1] Plaintiffs' reliance on the BSA—extrinsic evidence not attached to the Amended Complaint—highlights their belated efforts to cure their deficient pleading. The Court need not consider allegations made only in the opposition. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 & n.8 (9th Cir. 2019). But if the Court does consider the BSA, it should consider the entire document, not merely the portions Plaintiffs claim support their theories. *Beeman v. Mayorkas*, 2021 WL 3207414, at *3 (W.D. Wash. July 29, 2021).

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*separate products*. (¶ 175). Plaintiffs thus cannot cure their lack of standing by calling FBA a markup on products sold through the Featured Offer, because then the markup would simply be a part of a single price customers paid for a *single* product—and there could be no viable tying claim.

### B. *Pepper*'s allegations are not analogous to those made by Plaintiffs.

Plaintiffs insist this case is like *Pepper*, but they ignore a central feature underlying the Supreme Court's decision: The consumers who purchased iPhone apps from Apple had standing only because "Apple s[old] the apps directly to iPhone owners." *Pepper*, 139 S. Ct. at 1519. Whereas the consumers in *Pepper* directly purchased the allegedly overpriced iPhone apps from Apple, Plaintiffs here did not purchase the allegedly overpriced product—FBA—from Amazon.[2] As both the Amended Complaint and Opposition make clear, FBA is a business service Amazon sells to third-party sellers, not something Plaintiffs purchased (or could purchase, or would even need to purchase). *See supra* section I.A. The complaint in *Pepper* alleged that Apple made its App Store "the only place where iPhone owners may lawfully buy [iPhone applications.]" 139. S. Ct. at 1519. In this manner, the plaintiffs alleged, Apple had "monopolized the retail market for the sale of apps," products that "the consumers purchased directly from Apple, the alleged monopolist." *Id.* at 1518–20. The Court rejected Apple's suggestion that *Illinois Brick* should be extended to bar suits by direct purchasers when the seller is not the party "who sets the retail price." *Id.* at 1521–22. But Amazon's argument does not depend on such a "who-sets-the-price" theory. Instead it rests on a far more basic fact: Unlike *Pepper*, where Plaintiffs purchased the allegedly monopolized product (apps), here customers do not purchase FBA at all.

Because Plaintiffs do not purchase FBA, the Amended Complaint offers an indirect theory of harm: third-party sellers may "pass on" some of their logistics costs to end consumers. (¶¶ 129–136). *Illinois Brick* rejected such "pass-on theories," which the Court explained "would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs

---

[2] As to items that Plaintiffs purchased from third-party sellers, Plaintiffs did not purchase anything from Amazon, much less FBA. The Amended Complaint, and Amazon's website, clearly convey that when items are sold by third-party sellers, the consumer is purchasing directly from the third-party, not Amazon. (¶¶ 121 ("Sold by PConline365"), 122 ("Sold by Stramper")).

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that could have absorbed part of the overcharge from direct purchasers to middlemen to ultimate consumers." 431 U.S. at 737. *Illinois Brick* also explained that courts should not entertain "attempts to carve out exceptions" to the direct-purchaser rule for certain types of markets; instead, pass-on theories should be flatly rejected. *Id.* at 743–45. Plaintiffs' reading of *Pepper* is a frontal attack on *Illinois Brick*, asking this Court to manage litigation in which a central question would be the degree to which hundreds of thousands of third-party sellers passed on allegedly supracompetitive logistics fees to the Plaintiffs. Plaintiffs' theory is the quintessential example of what *Illinois Brick* held was inappropriate, and the only way to accept Plaintiffs' argument is to misread *Pepper* as having overturned that precedent. *Pepper*, which merely applied *Illinois Brick*'s direct-purchaser rule, does not support that absurd result. *See Pepper*, 139 S. Ct. at 1524 (reiterating that courts "should not engage in an unwarranted and counterproductive exercise to litigate a series of exceptions" to the direct-purchaser rule).

### C. Plaintiffs lack standing under *AGC*.

Plaintiffs also lack standing under the *AGC* factors. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 & n.10 (9th Cir. 2021); *AGC*, 459 U.S. at 538–45. In particular, the Opposition fails to grapple with the fact that Plaintiffs' alleged injuries do not occur at the first step in the causal chain after the challenged conduct. For example, Plaintiffs bring claims based on purchases where Amazon is the seller setting the price (in addition to purchases from third-party sellers in Amazon's store). Plaintiffs lack antitrust standing as to these purchases not only under *Illinois Brick*, but also under the requirement that antitrust plaintiffs must allege injuries that flow directly from the alleged violation, are non-speculative, and do not require complex apportionment of damages. (Mot. 10–12). Instead, Plaintiffs' allegations depend on a complex chain of causation that would be difficult to untangle, namely their allegation that, because sellers charge higher prices due to the supposed tying arrangement, Amazon is also able to charge higher prices in its capacity as a first-party seller. (¶¶ 137–141). Even if Plaintiffs were correct that *Pepper* reduced *Illinois Brick* to a simple requirement that the plaintiff must have paid some money to the defendant, that would not enable them to avoid the full antitrust standing analysis under *AGC*.

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98101-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs argue, again relying on *Pepper*, that their claims do not create a risk of duplicative recovery or require complex apportionment of damages. (Opp. 11–12). In *Pepper*, however, there was no risk of "multiple parties at different levels of a distribution chain . . . trying to all recover the same passed-through overcharge," because the overcharge had "not been passed on by anyone to anyone." 139 S. Ct. at 1524–25. Plaintiffs here, by contrast, predicate their theory of harm on the notion that sellers have passed on the costs of FBA to end consumers, (¶¶ 31, 99, 129–136, 155, 163), creating the duplication problem that the Supreme Court found was absent from *Pepper*.

Plaintiffs next suggest they are entitled to standing by analogy to *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) (Opp. 9–10), but again the plaintiff in that case directly purchased the product (a restrictive health-insurance policy) that formed the basis of the alleged conspiracy. The plaintiff had a health plan that paid for psychotherapy services rendered by psychiatrists but not psychologists, and alleged that the health insurer had engaged in a conspiracy with a psychiatrists' organization to prevent psychologists' entry into the market. 457 U.S. at 467–70. The Court held the plaintiff could bring suit under Section 4 of the Clayton Act despite not herself being one of the affected competitors, i.e., a psychologist. *Id.* at 478–79. Because denying coverage to consumers was the "very means" through which the conspirators allegedly effected the scheme, plaintiff's injuries were "inextricably intertwined" with the anticompetitive harm. *Id.* at 479, 484. Plaintiffs' allegations here are far from those held sufficient in *McCready*. It would be third-party sellers—not consumers—that sit in the position analogous to the *McCready* plaintiff: Sellers are the entities that allegedly would be purchasing from logistics competitors absent the conduct Plaintiffs allege, but instead are purchasing FBA. The end consumers are a step further removed, and are not purchasing the alleged product through which logistics services are diverted.

Further, as the Ninth Circuit has explained, the "broad language" used in *McCready* did nothing to weaken the requirement that an antitrust plaintiff be "*directly* harmed by defendants' allegedly unlawful conduct." *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (emphasis in original). Plaintiffs' "simple invocation" of the phrase "inextricably intertwined" does not permit them to "avoid the fundamental requirement

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

for antitrust standing that [the plaintiffs] have suffered an injury of the type—almost exclusively suffered by consumers or competitors—that the antitrust laws were intended to prevent." *Id.* Indeed, the first authority Plaintiffs cite concerning "inextricably intertwined" injuries concluded the plaintiffs had "neither alleged that they participate in the relevant market nor shown that their harm was inextricably intertwined with the harm the conspirators sought to inflict on that market." *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 908 (C.D. Cal. 2012). So too here: Plaintiffs made no purchases in the market for retail logistics services.[3] This case does not fit within the narrow class of cases involving "inextricably intertwined" injuries.

## II. Plaintiffs fail to address the fatal defects in their Section 1 tying claim.

### A. Plaintiffs still do not identify separate, tied products.

#### 1. Plaintiffs fail to show the Featured Offer is separately for sale.

Plaintiffs have no response to Amazon's case law showing that something must be for sale to be a product.[4] (Mot. 13 (citing cases)). Plaintiffs assert that sellers "covertly" purchase Featured Offer placement "through the tying arrangement itself" and "the price of Buy Box placement . . .

---

[3] Plaintiffs' other cases on this topic (Opp. 10 n.7) are no more helpful to them. In *Ellis v. Salt River Project Agricultural Improvement & Power District*, the plaintiff had installed a rooftop solar system that could sell power back to the grid. 24 F.4th 1262, 1266–67 (9th Cir. 2022). The plaintiff challenged a new pricing plan by the local power utility, which was allegedly designed to eliminate competition from solar power; that is, the plaintiff was a direct competitor in the relevant market. *Id.* at 1267, 1274–75. In *NorthBay Healthcare Group, Inc. v. Kaiser Foundation Health Plan, Inc.*, the defendant health insurer allegedly steered indigent patients to the plaintiff's hospital network. 838 F. App'x 231, 234 (9th Cir. 2020). The plaintiff's hospitals were in-network for the defendant's main competitor in the insurance market, and thus the plaintiff had alleged that harm to it was the "very means" through which the defendant sought to drive the rival insurer out of the market. *Id.* at 235–36. In *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, the plaintiff alleged two firms that dominated the relevant market agreed for one to cease manufacturing its own product and become a distributor for its previous competitor. 352 F.3d 367, 368–70 (9th Cir. 2003). The plaintiff's own business consisted of renting and using the now-eliminated product. *Id.* The Ninth Circuit held the plaintiff need not plead that the combined market actually suffered from "artificially increased prices"; it was sufficient to allege the agreement "effectively ruined" the plaintiff's business, a "harm directly related to the unlawful removal of a competitive product from the market." *Id.* at 370, 374, 378. None of these cases remotely suggests Plaintiffs here have standing.

[4] Plaintiffs cite *Surgical Instrument Service Co. v. Intuitive Surgical, Inc.*, 2021 WL 5474898, at *3 (N.D. Cal. Nov. 23, 2021), and *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 19 (1984), for the proposition that they have pled "separate products by plausibly alleging that the products exist in separate markets." (Opp. 12). This "separate-products test" is ill-suited to questions involving technological innovation and integration. *See United States v. Microsoft Corp.*, 253 F.3d 34, 89 (D.C. Cir. 2001).

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

is hidden within the price of Fulfillment by Amazon." (Opp. 13). This circumlocution confirms that the Featured Offer cannot be separately purchased, and Plaintiffs' cases support Amazon's point. In *Nobody in Particular Presents, Inc. v. Clear Channel Communications., Inc.*, 311 F. Supp. 2d 1048, 1093–94 (D. Colo. 2004), independent promoters sold the tying product; here, the Featured Offer cannot be separately bought. And Plaintiffs' reference to *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 478–80 (3d Cir. 1992), is beside the point because it was uncontested that the tying product there (new automobiles) was separately for sale.

### 2.  Plaintiffs do not dispute that the Featured Offer is an integrated component of Amazon's website.

Plaintiffs attempt to distinguish Amazon's cited examples by arguing that the tying and tied products in those cases were technologically integrated with each other, while FBA and the Featured Offer are not. (Opp. 13–14). But Plaintiffs' argument elides the foundational point: Those cases show that an integrated technological feature that cannot be bought or sold independent of a larger system is not a distinct *tying* product. *See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 971 (N.D. Cal. 2021) (in-app purchase system not a product because it could not be "bought or sold" independent from software into which it was integrated); *Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, at *12 (N.D. Cal. Nov. 30, 2021) ("iOS notary stamps" and other features were not products because they were not sold or licensed separate from app approval process). Plaintiffs accept that the Featured Offer is "the customer-facing result of an algorithm" (Opp. 14), and therefore just one embedded component of Amazon's website. It cannot be a distinct product and cannot underlie a tying claim.

### B.  Plaintiffs fail to demonstrate that so-called "technological ties" can be unlawful under either the *per se* rule or the rule of reason.

Plaintiffs mischaracterize Ninth Circuit case law on "technological ties." They selectively cite from *Aerotec International, Inc. v. Honeywell International, Inc.*, 836 F.3d 1171, 1175 (9th Cir. 2016), to suggest this Circuit recognized the possibility of a technological tie in *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983). (Opp. 15). But *Foremost Pro Color* "expressly declined to find that allegations of technological ties, without more, could

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

provide the basis for *per se* Section 1 liability." *Apple iPod iTunes Antitrust Litig.*, 2009 WL 10678931, at *5 (N.D. Cal. May 15, 2009). Plaintiffs here allege nothing "more" to show why this Court should be the first to find either *per se* or rule-of-reason liability from a technological tie. *See Aerotec*, 836 F.3d at 1175; *Foremost Pro Color*, 703 F.2d at 542–43; *Apple iPod iTunes Antitrust Litig.*, 2009 WL 10678931, at *5.

Plaintiffs claim this Court should scrutinize the Featured Offer algorithm design because it allegedly confers no benefit to consumers. (Opp. 15). But the Amended Complaint does not support that assertion, and their Opposition references only Section 2 cases, which are irrelevant to a Section 1 tying claim. (*Id.*). The only case they cite that even mentions tying ***rejects*** *per se* liability under Section 1. *United States v. Microsoft Corp.*, 253 F.3d 34, 84–98 (D.C. Cir. 2001). And Plaintiffs' claim that Amazon uses the Featured Offer as "an instrument to coerce sellers into paying for FBA" (Opp. 16), again does not describe a tying arrangement under Section 1, but the operation of an algorithm, which cannot create Section 1 liability. (Mot. 14–16).

### C. Plaintiffs do not define a proper tying market.

Plaintiffs acknowledge their primary asserted market—"Buy Box" placement—is a single-brand market (Opp. 17), but ignore that the "Supreme Court and Ninth Circuit have only found single-brand markets plausible in the context of *aftermarkets* which are 'wholly derivative from and dependent on the primary market.'" *Reilly v. Apple Inc.*, 2022 WL 74162, at *5 (N.D. Cal. Jan. 7, 2022) (emphasis in original) (citation omitted). Plaintiffs do not allege "Buy Box" placement is an aftermarket; nor do they address the factors required to prove a single-brand market in this Circuit, *see Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1049–50 (9th Cir. 2008).

Plaintiffs' alternative market definition—"the online retail market in the United States" (Opp. 16)—is irrelevant because it is not the market in which the supposed tying product (the Featured Offer) competes. (¶ 175(i) (tying product market is "market for favorable product placement on Amazon's website, and on the internet more broadly")). Instead of explaining how an "e-commerce market" could be relevant to the tying claim, Plaintiffs attempt to rely on the

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

holding in *Frame-Wilson v. Amazon.com, Inc.*, 2022 WL 741878, at *9–10 (W.D. Wash. Mar. 11, 2022). But that case is beside the point because the plaintiffs there made wholly different allegations, with no connection to the Featured Offer, FBA, or Plaintiffs' alleged markets for product placement and logistics.[5]

### D. Plaintiffs allege no coercion.

Plaintiffs assert that an express contractual term is not required in tying claims. This mischaracterizes Amazon's argument, (*see* Mot. 18), which was that the complaint lacks any allegation that Amazon ***required*** sellers to use FBA. (¶¶ 36, 84, 126 (admitting 27% of sellers do not use FBA and failing to allege the 73% who do use FBA do so to the exclusion of other means of fulfillment)); *cf. Packaging Sys. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1085 (C.D. Cal. 2017) (tying product (sealant) could be obtained ***only*** with tied product (injection kits)). Plaintiffs offer no response; their assertion of de facto coercion remains too "attenuated" to survive a motion to dismiss. *Aerotec Int'l*, 836 F.3d at 1179–80.

### E. Plaintiffs allege no anticompetitive effects in the tied product market.

Plaintiffs' market effect allegations remain impermissibly devoid of fact, and their rule-of-reason claim consists of a single conclusory sentence. (¶ 179; Opp. 19–20). This falls far short of their burden to plead detailed "actual adverse effects" in the tied product market (logistics). (Mot. 18–19 (citing cases)). And to the extent Plaintiffs provide any allegations in this regard, they relate to supposed effects on ***sellers*** (e.g., their assertion that Amazon charges 35% more than competitors for FBA (¶ 25)). Plaintiffs' only allegation of anticompetitive effects on the ***logistics market*** is their assertion that Amazon has overtaken the U.S. Postal Service and will overtake UPS and FedEx by 2022. (¶¶ 180, 192). But allegations of a defendant's ability to outcompete a third-party are insufficient as a matter of law to show the requisite "actual adverse effect." (Mot. 19 n.8 (citing *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979))).

---

[5] Plaintiffs also claim "product placement" is no different from advertising, "which has been recognized as a relevant market in numerous cases" (Opp. 13–14), but advertising is for sale; the Featured Offer is not.

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### III.     Plaintiffs' Section 2 monopolization claim fails on multiple grounds.

Plaintiffs' Opposition impermissibly attempts to recast their Section 2 claim as one of "attempted monopolization." (Opp. 20–21). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Picciano v. Clark Cnty.*, 2022 WL 36893, at *2 (W.D. Wash. Jan. 4, 2022). But whatever Plaintiffs plead, their admission that Amazon performs only 20% of all e-commerce deliveries (¶¶ 180, 193; Opp. 3 n.2) disposes of any claim of actual or attempted monopolization. (Mot. 20–21 (citing *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995)); *see Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 26 & n.43 (1984); *Patt v. Antech Diagnostics, Inc.*, 2020 WL 5076970, at *6 (C.D. Cal. May 18, 2020); *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 958 (D. Or. 2018); *ChriMar Sys., Inc. v. Cisco Sys.*, *Inc.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014).

Plaintiffs have no serious response to this point. Plaintiffs claim they need not show monopoly power in the logistics market under *Cost Management Services, Inc. v. Washington Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996), but that case says no such thing. In fact, the court there found that the defendant had sufficient market power for a Section 2 claim where plaintiff alleged the defendant controlled **90 percent** of gas sales—the market alleged to be the target of monopolization. *Id.* at 940. Here, Plaintiffs allege Amazon has a mere one-fifth share of the logistics market, the market Amazon purportedly seeks to monopolize.

Plaintiffs, moreover, base their Section 2 claim on accusations of "monopoly leveraging," but such conduct is anticompetitive only if it results in attempted or actual monopolization—an outcome that Plaintiffs, as a matter of law, fail to plead. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547–48 (9th Cir. 1991); *Cost Mgmt. Servs.*, 99 F.3d at 951–52; *see Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004) ("[L]everaging presupposes anticompetitive conduct.").

Plaintiffs' only remaining assertion of anticompetitive conduct is the alleged tying arrangement. But that, as discussed in Part II, is deficient for multiple reasons. Plaintiffs' Section 2 claim fails for the same reasons as their Section 1 claim does. (Mot. 13–19).

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### IV. Claims that accrued before July 26, 2017 are time barred.

In addition to the fatal defects described above, any claims arising from alleged injuries incurred before July 26, 2017 are barred by the statute of limitations. Plaintiffs acknowledge that "some courts have applied a 'pure accrual' rule to antitrust claims," (Opp. 22), but those courts include the Supreme Court and the Ninth Circuit. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186–88 (1997); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060–62 (9th Cir. 2012). In arguing that a discovery rule should instead apply, Plaintiffs cite only inapplicable or non-binding authority. *See Trotter v. Int'l Longshoremen's & Warehousemen's Union, Loc. 13*, 704 F.2d 1141, 1142–43 (9th Cir. 1983) (non-antitrust case); *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (out-of-circuit opinion that did not address the relevant portion of *Klehr*); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1077 (N.D. Cal. 2014) (defendants did not argue for an injury-accrual rule). None of this authority is persuasive, nor could it overcome the binding precedent that rejects a discovery rule for Clayton Act claims.

Plaintiffs therefore fall back on their perfunctory fraudulent-concealment allegations. As described in Amazon's Motion, Plaintiffs' position is radical—that a company's general statements about providing a good customer experience and low prices "fraudulently conceal" claims alleging antitrust damages. If Plaintiffs' position were adopted, it would effectively repeal the statute of limitations that Congress included in the Clayton Act. The allegations in the Amended Complaint do not plead "that the defendant affirmatively misled" Plaintiffs, or that Plaintiffs lacked "constructive knowledge of the facts giving rise to [their] claim despite . . . diligence in trying to uncover those facts." *Hexcel Corp.*, 681 F.3d at 1060.

### CONCLUSION

For the foregoing reasons, the Court should grant Amazon's motion and dismiss the Amended Complaint with prejudice.

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 21st day of June

Davis Wright Tremaine LLP

By */s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
Adam Sieff, *pro hac vice*
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206.622.1350
Fax: 206.757.7700
Email: steverummage@dwt.com
Email: adamsieff@dwt.com


By */s/ Jonathan B. Pitt*
John Schmidtlein*
Jonathan B. Pitt*
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
Email: jschmidtlein@wc.com
Email: jpitt@wc.com

* *pro hac vice*

Attorneys for Amazon.com, Inc.

REPLY IN SUPPPORT OF MOTION TO DISMISS
(2:21-cv-00996 RSM) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax