The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA HOGAN and ANDREA SEBERSON, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

AMAZON.COM, Inc.,

Defendant.

No. 2:21-cv-00996 RSM

**DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

NOTE ON MOTION CALENDAR: September 15, 2023

DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS THE SAC
(2:21-cv-00996 RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 2

ARGUMENT .......................................................................................................................... 3

I.  Plaintiffs Still Lack Antitrust Standing ...................................................................... 3

  A.  Plaintiffs fail to allege antitrust injury because they neither purchase FBA nor compete in the market in which competition allegedly was restrained. ......... 4

  B.  Plaintiffs are at best indirect purchasers. ......................................................... 7

  C.  Plaintiffs' alleged injuries are at best remote and speculative. ........................ 9

  D.  Plaintiffs' claims risk duplicative recovery and complexity in apportioning damages ........................................................................................................... 10

II. Plaintiffs' Amendments Do Not Address the Other Deficiencies in Their Claims ........ 12

  A.  Plaintiffs fail to plead a Section 1 tying claim. .............................................. 12

    1.  Plaintiffs do not allege a legally cognizable tie. ................................. 13

    2.  Plaintiffs fail to allege a proper tying product market, that Amazon has market power in such a market, or that any purchaser was "coerced" into purchasing the tied product ............................................ 14

    3.  Plaintiffs fail to show sufficient anticompetitive effects in the tied product market. ................................................................................... 17

  B.  Plaintiffs fail to plead a monopolization claim under Section 2 ....................... 18

    1.  Plaintiffs do not allege actionable anticompetitive conduct. .............. 18

    2.  Plaintiffs fail to allege monopoly power in the relevant market ............. 19

  C.  Most of Plaintiffs' claims are time-barred. ..................................................... 20

    1.  Plaintiffs' claims accrued when their alleged injuries occurred, not when they allegedly "discovered" their claims ....................................... 20

    2.  Plaintiffs fail to plead any of the necessary elements for fraudulent concealment tolling ............................................................................... 21

III. Further Amendment Would Be Futile .......................................................................... 22

CONCLUSION ....................................................................................................................... 22

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Federal Statutes**                                                                 **Page(s)**

15 U.S.C. § 1 ...............................................................................12, 13, 14, 17, 18, 19

15 U.S.C. § 2 .................................................................................6, 18, 19, 20

15 U.S.C. § 15(a) .........................................................................................20

15 U.S.C. § 15b .............................................................................................20

**Federal Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016) ......................................................16, 17

*AFMS, LLC v. UPS Co.*,
    2011 WL 13128436 (C.D. Cal. Nov. 23, 2011)....................................17

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) .................................................................18

*Andrx Pharms. v. Biovail Corp. Int'l*,
    256 F.3d 799 (D.C. Cir. 2001) ..............................................................10

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019)..............................................................................8

*Apple iPod iTunes Antitrust Litig.*,
    2009 WL 10678940 (N.D. Cal. Oct. 30, 2009)......................................14

*Apple, Inc. v. Psystar Corp.*,
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................15

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters (AGC)*,
    459 U.S. 519 (1983).......................................................................2, 11, 12

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    9 F.4th 1102 (9th Cir. 2021) ..................................................................12

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ...............................................12, 13, 17

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*,
   613 F.2d 727 (9th Cir. 1979) ...................................................................................17

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986) ...............................................................................................4

*Cherrone v. Florsheim Dev.*,
   2012 WL 6049021 (E.D. Cal. Dec. 5, 2012) ..........................................................16

*City of Oakland v. Oakland Raiders*,
   20 F.4th 441 (9th Cir. 2021) ......................................................................4, 5, 9, 10

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
   99 F.3d 937 (9th Cir. 1996) .....................................................................................18

*DiMartino v. BMW of N. Am., LLC*,
   2016 WL 4260788 (D.N.J. Aug. 11, 2016) ............................................................10

*Doe I v. Abbott Labs.*,
   571 F.3d 930 (9th Cir. 2009) ...................................................................................19

*Dream Big Media Inc. v. Alphabet Inc.*,
   2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) .........................................................19

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ..................................................................................22

*Eagle v. Star-Kist Foods, Inc.*,
   812 F.2d 538 (9th Cir. 1987) .............................................................................11, 12

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) .................................................................................................19

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ....................................................................................13

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
   703 F.2d 534 (9th Cir. 1983) .............................................................................13, 19

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ................................................................5, 6, 12, 14, 18, 19

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012) .............................................................................20, 21

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) .............................................................................15, 16

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  32 F.4th 242 (3d Cir. 2022) ...................................................................................13

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) ...............................................................................................12

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).............................................................................................4, 8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ..............................................................................18

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ...................................................................................21

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016)....................................................................................6

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  19 F.4th 127 (2d Cir. 2021) .........................................................................7, 9, 10

*In re Animation Workers Antitrust Litig.*,
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ..................................................................20

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) ..............................................................................8, 9

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  313 F. Supp. 3d 931 (N.D. Ill. 2018) ....................................................................10

*In re eBay Seller Antitrust Litig.*,
  2010 WL 760433 (N.D. Cal. Mar. 4, 2010),
  *aff'd*, 433 F. App'x 504 (9th Cir. 2011)...................................................................7

*In re Google Digit. Advert. Antitrust Litig.*,
  2021 WL 2021990 (N.D. Cal. May 13, 2021) .......................................................16

*It's My Party, Inc. v. Live Nation, Inc.*,
  811 F.3d 676 (4th Cir. 2016) ................................................................................14

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984).............................................................................................13, 17

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)...............................................................................................20

*Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*,
  763 F.3d 1280 (11th Cir. 2014) ..............................................................................5

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Lucas v. Bechtel Corp.*,
  800 F.2d 839 (9th Cir. 1986) ......................................................................................9

*Ohio v. Am. Express Co. (AmEx)*,
  138 S. Ct. 2274 (2018) ...........................................................................................6, 7

*Oliver v. Am. Express Co.*,
  2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) ...........................................................7

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ................................................................................16

*PBTM LLC v. Football Nw., LLC*,
  511 F. Supp. 3d 1158 (W.D. Wash. 2021) (Martinez, J.) ........................................5

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
  32 F.4th 824 (9th Cir. 2022) .....................................................................................7

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)....................................................................................16

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ..................................................................................19

*Reilly v. Apple Inc.*,
  578 F.Supp.3d 1098 (N.D. Cal. 2022) ...............................................................15, 16

*Reveal Chat HoldCo, LLC v. Facebook, Inc.*,
  471 F. Supp. 3d 981 (N.D. Cal. 2020) ....................................................................22

*Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*,
  2022 WL 595696 (9th Cir. Feb. 28, 2022) .............................................................21

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
  532 F.3d 963 (9th Cir. 2008) ...............................................................................5, 17

*Salveson v. JP Morgan Chase & Co.*,
  166 F. Supp. 3d 242 (E.D.N.Y. 2016),
  *aff'd*, 663 F. App'x 71 (2d Cir. 2016).....................................................................11

*Salveson v. JPMorgan Chase & Co.*,
  860 F. App'x 207 (2d Cir. 2021) ...............................................................................7

*State Oil Co. v. Khan*,
  522 U.S. 3 (1997).....................................................................................................17

*Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*,
  123 F. Supp. 3d 1219 (C.D. Cal. 2015) ..................................................................11

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Times-Picayune Pub. Co. v. United States*,
  345 U.S. 594 (1953) ................................................................................5

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) ..............................................................................18

*United States v. Microsoft Corp.*,
  147 F.3d 935 (D.C. Cir. 1998) ..............................................................14

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ................................................................13

*Universal Grading Serv. v. eBay, Inc.*,
  2012 WL 70644 (N.D. Cal. Jan. 9, 2012) .............................................10

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ..............................................................................18

*Warren Gen. Hosp. v. Amgen Inc.*,
  643 F.3d 77 (3d Cir. 2011) .................................................................5, 7

**Other Authorities**

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 776 (5th ed. 2021) .............................19

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1757a (5th ed. 2021) .........................13

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) - vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

# INTRODUCTION

Even after the Court dismissed their First Amended Complaint, Plaintiffs' Second Amended Complaint retains all the same allegations and legal theories, adding only about a dozen new paragraphs. Those amendments do not cure what this Court recognized is a fatal defect in their pleading: Plaintiffs did not purchase Fulfillment by Amazon ("FBA"), a service that "provides warehousing, packing, and shipping to third-party sellers" (¶ 15) and that is not sold or offered to shoppers on Amazon.com.[1] End consumers like Plaintiffs therefore did not suffer an "antitrust injury" and lack antitrust standing to pursue claims that allege Amazon tied sellers' purchases of FBA to placement of their products as the Featured Offer.

*First*, Plaintiffs' newly added assertion that Prime subscriptions are an "annual shipping fee" (¶¶ 3, 160) is irrelevant: Prime subscription fees, paid by consumers, are wholly distinct from FBA fees paid by sellers. As the Court already held, Plaintiffs' tying claim alleges that FBA was the tied product. (Dkt. 41, at 9–11). Nothing in the Second Amended Complaint ("SAC") changes any of the allegations the Court considered in determining that sellers, not consumers, purchase FBA—which includes inventory storage, packing, management of returns, and other services available only to, and purchased only by, sellers.

*Second*, Plaintiffs' new suggestion that they indirectly pay for FBA because third-party sellers raise prices to cover the cost of FBA (¶¶ 4, 161–162) only underscores that Plaintiffs are not themselves purchasers of FBA. As the Court already held, this is precisely the sort of indirect-purchaser pass-through claim the Supreme Court barred in *Illinois Brick*.

*Finally*, Plaintiffs' new allegation of a "two-sided market" (¶¶ 29–31, 156) is merely an attempt to inject irrelevant jargon into a straightforward issue; it does nothing to negate Plaintiffs' concession that only sellers can purchase FBA. Plaintiffs' ineffectual amendments confirm that their lack of standing is no mere technicality or failure to plead magic words. Rather, Plaintiffs' fundamental allegation remains that Amazon subjected third-party sellers to a

---

[1] Paragraph citations ("¶") are to the Second Amended Complaint, Dkt. 44, unless otherwise indicated.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

tying arrangement, and the antitrust laws simply do not allow end consumers to bring such a claim.

Plaintiffs' amendments also do not even attempt to address any of the other deficiencies in their Complaint that Amazon identified in its original motion to dismiss, including the remote and speculative nature of their alleged injuries, the risk of duplicative recovery, the failure to allege the necessary elements of their Section 1 and 2 claims, and the untimeliness of most of their claims. Because the Second Amended Complaint suffers from numerous dispositive legal defects, and because Plaintiffs have already amended twice without stating viable claims, the Court should dismiss with prejudice.

RELEVANT BACKGROUND[2]

Plaintiffs filed their Consolidated Amended Class Action Complaint in February 2022 (Dkt. 23) ("First Amended Complaint"), alleging Amazon had illegally "tied" FBA to the Featured Offer in violation of the antitrust laws. Amazon moved to dismiss for lack of antitrust standing and failure to state a claim. (Dkt. 26). In April 2023, the Court granted Amazon's motion, ruling that Plaintiffs failed to plead antitrust standing. (Dkt. 41, at 5, 12).

The Court explained that the First Amended Complaint was "replete with allegations that third-party sellers, and not Plaintiffs, purchase FBA." (*Id.* at 9). Accordingly, Plaintiffs did not purchase FBA at all, or were "at best indirect purchasers" of FBA, and are "precluded from bringing antitrust claims by the bright-line rule established in *Illinois Brick*," which "bars suits by indirect purchasers." (*Id.* at 12 (emphasis omitted)). Taking the allegations in the First Amended Complaint as true, Plaintiffs did not "directly pa[y] for FBA shipping charges themselves." (*Id.* at 10). Because Plaintiffs' claims failed under the direct-purchaser requirement established by *Illinois Brick*, the Court did not reach Amazon's additional antitrust standing arguments under *Associated General Contractors of California, Inc. v. California State Council*

---

[2] For a discussion of the development of the Featured Offer and Fulfillment by Amazon, see Amazon's first Motion to Dismiss, Dkt. 26, at 3–4.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*of Carpenters*, (*AGC*), 459 U.S. 519 (1983), or its arguments that Plaintiffs failed to state a claim. (Dkt. 41, at 5, 12.)

On June 21, 2023, Plaintiffs filed a Second Amended Complaint. (Dkt. 44). The Second Amended Complaint is largely unchanged from the First Amended Complaint, and makes the same core allegations that the Court previously found insufficient. As before, Plaintiffs seek to represent a putative class of consumers who used the "Buy Box" on Amazon.com to purchase goods that were packed and shipped using FBA. (¶¶ 47–48, 164). As before, Plaintiffs premise their claims entirely on the assertion that Amazon conditions Featured Offer selection (or, as Plaintiffs say, "Buy Box" placement) on a seller's use of FBA. (¶¶ 18, 83, 187, 198). And as before, Plaintiffs claim this forces *sellers* (not consumers like Plaintiffs) to use FBA even when other fulfillment services might be less expensive (¶¶ 85, 96–97, 203), resulting in an alleged increase in Amazon's market share in a purported fulfillment and logistics market in which ***Plaintiffs do not participate*** (¶¶ 47–48).

Despite the fundamental deficiencies that the Court and Amazon identified in the First Amended Complaint, Plaintiffs make just three substantive changes in the Second Amended Complaint: They now characterize the Amazon Prime membership as an "annual shipping fee"; they claim they pay for shipping through inflated prices charged by sellers (who directly purchase FBA) (¶¶ 161–162); and they assert that "Amazon's Fulfillment services are 'what economists call a "two-sided platform"'" (¶¶ 29–31, 156–163). As discussed below, none of Plaintiffs' amendments fixes their standing problem, nor do these changes even attempt to address the substantive defects in their claims.

## ARGUMENT

### I.    Plaintiffs Still Lack Antitrust Standing

To have antitrust standing, Plaintiffs must allege facts constituting "antitrust injury." Plaintiffs claim their alleged injury—overpaying for goods purchased on Amazon.com (¶¶ 196, 208)—stems from harm to competition in a separately alleged market for fulfillment and logistics services (¶¶ 190–191, 202–205). But the Plaintiffs did not purchase those services. This

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

disconnect between the alleged anticompetitive conduct and Plaintiffs' claimed injury is fatal—as is the indirect, remote, and speculative nature of Plaintiffs' alleged harm.

A plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 452–53, 455 (9th Cir. 2021) (finding Article III standing but not antitrust standing).[3] In *AGC*, the Supreme Court identified the factors a court must consider to determine whether plaintiffs have standing to bring an antitrust claim: (1) whether the plaintiffs suffered "antitrust injury," i.e., the type of injury the antitrust laws were intended to prevent; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *City of Oakland*, 20 F.4th at 455 & n.10. Further, the Supreme Court has adopted a freestanding bright-line rule that indirect purchasers may not bring private antitrust damage claims. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 723–26, 745–47 (1977). Plaintiffs lack standing under both *AGC* and *Illinois Brick*.

Though the Second Amended Complaint runs over 200 paragraphs, only about a dozen are new, and they contain almost exclusively conclusory characterizations and legal arguments, rather than well-pleaded facts. None of Plaintiffs' additions overcomes their antitrust standing problem.

### A.  Plaintiffs fail to allege antitrust injury because they neither purchase FBA nor compete in the market in which competition allegedly was restrained.

Plaintiffs' amendments do nothing to change the fact that they do not purchase the allegedly tied product, FBA, nor do they compete in the market for logistics services. As discussed in Amazon's first motion to dismiss, the first *AGC* factor, antitrust injury, is "mandatory"—the Court should dismiss Plaintiffs' antitrust claims for failing to allege antitrust injury even if the other factors were to favor Plaintiffs. *City of Oakland*, 20 F.4th at 456; *accord Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986).

---

[3] Unless otherwise indicated, when language quoted from a decision contains material quoted from another source, all brackets, ellipses, internal quotation marks and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Antitrust injury requires "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *City of Oakland*, 20 F.4th at 456. In addition, and critically for these purposes, plaintiffs must have suffered their injury "in the market where competition is allegedly being restrained. ***Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.***" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020).

Plaintiffs allege that Amazon has used a tying arrangement to harm competition in the market for retail logistics services. (¶¶ 191, 202). In a tying arrangement, "the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008). "[I]f the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product." *Id.* The potential harms of a tying arrangement occur in the market for the tied product. *See, e.g.*, *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 614 (1953); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1183 (W.D. Wash. 2021) (Martinez, J.). As a result, a plaintiff must be a purchaser (or competitor) ***in the market for the tied product*** to challenge the arrangement. To evaluate whether purchasers have standing to assert a tying claim, "[t]he key question . . . is whether the plaintiff purchased the ***tied*** product from the antitrust defendant." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 88 (3d Cir. 2011); *accord Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1289 (11th Cir. 2014).

Plaintiffs do not purchase the tied product. The Second Amended Complaint describes the tying product as "placement in the Buy Box," the tied product as "Fulfillment by Amazon," and the alleged market in which the tied product competes as the "market for logistics for retail goods in the United States—namely, the warehousing, packing, and shipping of retail goods." (¶ 188). But Plaintiffs are not retailers who purchase logistics services for the warehousing, packing, and shipping of their goods. Rather, Plaintiffs allege they purchased "items" (¶ 196)

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

such as "skin care products, shampoo, consumer electronics, clothing, children's toys . . .

drinkware, skateboarding equipment, and jewelry" (¶ 47). Because Plaintiffs do not (and cannot)

allege they purchased the tied product—FBA—they cannot have suffered antitrust injury.[4]

The Section 2 claim suffers from the same problem, as it is based on harm in the same

allegedly tied product market: "logistical services for retail goods." (¶ 202). The harm alleged in

a Section 2 claim must occur in the supposedly monopolized market. *See Qualcomm*, 969 F.3d at

992. But the Second Amended Complaint does not allege that end consumers such as Plaintiffs

purchase fulfillment/logistics services—instead, they purchase retail goods. (¶¶ 47–48). Plaintiffs

therefore fail to allege antitrust injury and lack standing to bring these claims.

In an attempt to obscure the fact that they do not purchase the allegedly tied product,

Plaintiffs now claim they purchase shipping services through their Prime subscription, which

they rebrand (inaccurately) as a "shipping fee." But that has no connection to the conduct

Plaintiffs contend violates the antitrust laws. They allege that the purported tying arrangement

targeted ***sellers*** (not consumers), and the allegedly tied product was ***FBA*** (not Prime). (¶ 190).

Despite Plaintiffs' repeated attempts to conflate FBA with shipping fees paid by shoppers, the

Complaint itself recognizes that FBA is "a logistics service that provides warehousing, packing,

and shipping ***to third-party sellers***." (¶ 15). By contrast, Amazon Prime is a customer

membership program. Although Amazon Prime includes a delivery component (¶ 58), that is

wholly different from FBA, which offers a suite of logistics services and is unavailable for

purchase by consumers like Plaintiffs. *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d

151, 161 (2d Cir. 2016) ("[T]o suffer antitrust injury, the putative plaintiff must be a participant

in the very market that is directly restrained.").

The Second Amended Complaint's new allegations that Amazon operates a "two-sided

platform" for fulfillment services, and its accompanying citation to *Ohio v. American Express*

---

[4] As the Court previously found, "the Amazon Services Business Solutions Agreement does not establish Plaintiffs pay Amazon for FBA. . . . Plaintiffs' Amended Complaint is, instead, replete with allegations that third-party sellers, and not Plaintiffs, purchase FBA." (Dkt. 41, at 9).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Co.* (*AmEx*) (¶¶ 29–31, 156–163), also do not change this analysis. In *AmEx*, the Supreme Court explained that in assessing competitive effects, courts may need to examine both "sides" of a two-sided market (i.e., one in which intermediaries offer different services to separate groups on each "side"). 138 S. Ct. 2274, 2285–87 (2018). *AmEx* "did not directly address antitrust standing at all." *Salveson v. JPMorgan Chase & Co.*, 860 F. App'x 207, 209 (2d Cir. 2021).

Since *AmEx*, numerous cases have alleged the existence of two-sided markets, but no court has held that harm to competition on one side of such a market suffices to establish antitrust standing for a plaintiff that makes purchases only on the other side. Instead, courts have continued to focus their antitrust standing analysis on the purported harms to the plaintiffs bringing the litigation. *See, e.g.*, *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 840 (9th Cir. 2022) (despite allegations of two-sided market, antitrust injury turned on "relationship between [alleged] violation and [plaintiff's] injury"); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 143 (2d Cir. 2021) (antitrust standing analysis examines "relationship between the defendant's alleged unlawful conduct and the resulting harm to the plaintiff"); *Oliver v. Am. Express Co.*, 2020 WL 2079510, at *9–10 (E.D.N.Y. Apr. 30, 2020) (finding antitrust standing lacking despite alleged harms on other side of market).

Plaintiffs' suggestion that FBA competes in a two-sided market is thus entirely beside the point for purposes of antitrust standing. Even if Plaintiffs paid Amazon to ship products they purchase, that still would not make them proper enforcers of the antitrust laws with respect to purported violations on the other side of the market, where sellers purchase FBA. A supposed two-sided market does nothing to alter the basic requirement that consumer plaintiffs must have purchased the tied product itself. *Warren Gen. Hosp.*, 643 F.3d at 88; *cf. In re eBay Seller Antitrust Litig.*, 2010 WL 760433, at *10–14 (N.D. Cal. Mar. 4, 2010), *aff'd*, 433 F. App'x 504 (9th Cir. 2011) (applying antitrust injury requirement in context of two-sided market claim).

## B.   Plaintiffs are at best indirect purchasers.

As this Court previously recognized, even if Plaintiffs were treated as having purchased the tied product (logistics and fulfillment services), they still would lack standing because they

would at best be indirect purchasers unable to bring a private antitrust claim. The Supreme Court has adopted a bright-line rule precluding indirect-purchaser actions because "allowing indirect purchasers to recover using pass-on theories . . . would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." *Illinois Brick*, 431 U.S. at 740.

Plaintiffs' concession that their alleged harm results from third-party sellers passing on to them the costs of FBA (through higher prices for goods) establishes beyond question that any harm they suffered would be indirect and secondary. (¶¶ 47–48, 164, 196, 208). Plaintiffs claim they were injured because "Sellers can and do pass on the cost of Amazon's Fulfillment services" to consumers. (¶ 138). But private plaintiffs cannot recover for such supposedly passed-through harms. In *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1518 (2019), for example, the Court allowed consumers who purchased iPhone applications from Apple to pursue their claims only because "Apple s[old] the apps directly to iPhone owners" and "iPhone owners bought the apps directly from Apple." *Id.* at 1519–20. The *Pepper* plaintiffs not only purchased a product in the alleged market in which anticompetitive harm occurred—"the retail market for the sale of apps," *id.* at 1518–20—but also purchased the product directly from Apple. Plaintiffs here allege the opposite: They concede they made no purchases in the market where anticompetitive harm purportedly occurred, i.e. "logistics services for retail goods" (¶¶ 188, 190, 202, 204). Rather, Plaintiffs allege that third-party sellers passed along inflated FBA costs paid by the sellers. Allegations of this sort defeat antitrust standing. *See In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748–50 (9th Cir. 2012).

This Court previously recognized that Plaintiffs' factual allegations precluded any suggestion "that Plaintiffs somehow directly paid for FBA shipping charges themselves." (Dkt. 41, at 10). Eager to identify *something* Plaintiffs directly purchased from Amazon, the Second Amended Complaint observes that customers purchase Prime subscriptions, which it calls "shipping fee[s]." (¶¶ 3, 31, 160). As discussed above, however, Prime subscriptions have no logical connection to the supposed harm Plaintiffs allegedly suffered: The Second Amended

Complaint alleges that sellers are coerced into purchasing FBA (¶ 190), that sellers "pass on" those costs to shoppers (¶¶ 134–139), and that this results in "higher prices for items that Plaintiffs and Class Members purchased" (¶ 196). Even if they could be characterized as shipping fees, Prime subscriptions appear nowhere in this chain of alleged injury. Rather, Plaintiffs' theory of harm remains that sellers pass through supracompetitive FBA costs to them. *Illinois Brick* bars such theories, and the Court's prior ruling applies equally to the Second Amended Complaint.

### C.   Plaintiffs' alleged injuries are at best remote and speculative.

To have antitrust standing, Plaintiffs also must allege an injury that is the "direct result" of anticompetitive conduct; the harm cannot be "derivative and indirect" or "secondary, consequential, or remote." *City of Oakland*, 20 F.4th at 458; *accord Lucas v. Bechtel Corp.*, 800 F.2d 839, 844–45 (9th Cir. 1986). Antitrust standing is available only to parties "injured at the first step of the causal chain of the defendants' actions." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 134–35, 139–40.

The causal chain Plaintiffs hypothesize in the Second Amended Complaint is no different from the one alleged in the First Amended Complaint: (1) Amazon allegedly designs the algorithm for placement in the "Buy Box" such that using FBA is the most influential variable in choosing the winning seller (¶¶ 24, 121–128); (2) some sellers who would not otherwise use FBA therefore decide to do so (¶¶ 41, 190); (3) Amazon allegedly induces these sellers to pay higher prices for FBA than they would to alternative logistics carriers that warehouse and ship goods (¶¶ 27, 36, 96); (4) the sellers supposedly pass on the costs by charging consumers higher prices for their goods (¶¶ 134–141); and (5) consumers allegedly ignore lower-priced options on Amazon's store or at other retailers and opt to purchase the higher-priced offer featured in the "Buy Box" (¶¶ 10, 34, 60). Every one of these steps would need to occur for any plaintiff to have paid a higher price as a result of the alleged conduct.

This purported injury is far too indirect. *See In re ATM Fee Antitrust Litig.*, 686 F.3d at 744–45, 748–50 (ATM cardholders lacked antitrust standing to challenge ATM "interchange

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

fees," which ATM owners charged to card-issuing banks and banks allegedly passed on to cardholders; fact that cardholders "never directly paid interchange fees" was fatal to claims). Myriad cases dismiss, at the pleading stage, claims like Plaintiffs' that fail to allege injury occurring at the ***first step*** after the alleged anticompetitive conduct.[5] Here, at least ***five steps*** must occur before any Plaintiff could be injured.[6] And the Second Amended Complaint concedes that the direct impact of the alleged tying arrangement is on sellers, who allegedly may "pass on" those costs to end consumers. (¶¶ 134–141). Plaintiffs—who did not purchase FBA—could not possibly have been injured at the "first step" following the allegedly anticompetitive conduct. (*See* ¶¶ 120–146).

Plaintiffs' alleged injuries are too remote from the challenged conduct, and far too speculative, for them to be proper enforcers of the Sherman Act. Alerted to this deficiency and given the opportunity to amend, Plaintiffs did nothing to address it in their Second Amended Complaint. The Court should dismiss their claims on this independently sufficient ground.

### D. Plaintiffs' claims risk duplicative recovery and complexity in apportioning damages.

The Court should also dismiss Plaintiffs' claims because they risk either the recovery of multiple damages or prejudice to absent plaintiffs. Plaintiffs allege their damages result from

---

[5] *E.g.*, *City of Oakland*, 20 F.4th at 460 ("too many speculative links in the chain of causation" between alleged anticompetitive conduct and injury); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 140–41 (merchants who did not accept American Express cards lacked standing to pursue claim that contractual provisions caused competing credit card issuers to charge higher fees); *Andrx Pharms. v. Biovail Corp. Int'l*, 256 F.3d 799, 816–17 (D.C. Cir. 2001) ("We are more likely to find no standing if the plaintiff's injury both derives from and is measured by another's more direct injury."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 960–61 (N.D. Ill. 2018) (no viable tying claim where plaintiffs did not purchase both tying and tied product); *DiMartino v. BMW of N. Am., LLC*, 2016 WL 4260788, at *4 (D.N.J. Aug. 11, 2016) (consumer who purchased replacement fuel injectors from his car dealer could not pursue tying claim based on car manufacturer's alleged monopoly on aftermarket parts, since he did not purchase injectors directly from manufacturer); *Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *7–8 (N.D. Cal. Jan. 9, 2012) (complaint dismissed where purchasers of collectible coins on eBay only indirectly purchased "coin grading services," which eBay required for coin to be listed as "certified").

[6] Plaintiffs offer two ancillary theories of harm: (1) because only the 73% of sellers who use FBA can realistically compete for the Featured Offer, overall price competition on Amazon is reduced (¶¶ 35, 131–133); and (2) because tying forces sellers to charge higher prices, Amazon *qua* retailer can charge higher prices (¶¶ 37, 142–146). These theories add even more steps to the causal chain.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

higher costs supposedly passed on to them by sellers (¶¶ 131–141), suggesting that—if Plaintiffs' claims were meritorious—these sellers also could sue and collect treble damages for the same conduct. Because the sellers are "potential plaintiffs" at a higher "level in the distribution chain," this creates a risk of "conflicting claims to a common fund, the amount of the alleged overcharge," and "the danger of multiple liability for the fund and prejudice to absent plaintiffs." *AGC*, 459 U.S. at 544.

Partitioning out the degree to which sellers passed on the alleged costs of FBA would require precisely the kind of complex and highly speculative analysis courts avoid in antitrust cases by dismissing at the pleading stage. *AGC*, 459 U.S. at 543 (stating importance of "keeping the scope of complex antitrust trials within judicially manageable limits"); *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, 123 F. Supp. 3d 1219, 1232 (C.D. Cal. 2015) (indirect nature of injuries necessarily creates complexity in apportioning damages); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 264 (E.D.N.Y. 2016) ("long and complicated proceedings" would be necessary to determine damages passed down to consumers from direct payors of allegedly anticompetitive fees), *aff'd*, 663 F. App'x 71 (2d Cir. 2016). Assessing Plaintiffs' damages would require speculation about what sellers would have done in the absence of the challenged practices. Which alternative logistics providers, and which of their storage and shipping options, would sellers have used? Would those services have cost more or less than FBA? Been faster or slower? How do the tradeoffs match consumer preferences? How would consumers have responded to those seller choices? The need for such an exercise weighs against finding standing. *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 543 (9th Cir. 1987) (standing absent where apportioning damages would require "analysis of how much tuna and from whom the canneries would have bought if prices had been different; . . . or what wages would have been paid if prices had been different").

Plaintiffs' new allegations regarding Prime subscriptions and a purported two-sided market only exacerbate these difficulties. If Prime subscription fees and seller FBA fees both allegedly pay for overpriced logistics services, then Plaintiffs will need to perform complex and

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

speculative analysis to determine which, if either, of those fees would have been lower in the absence of the alleged tying arrangement. Nor is it at all clear to what degree Plaintiffs think they should be entitled to recover for FBA costs that are "passed through" to their side of a two-sided market. The "risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other," *AGC*, 459 U.S. at 544, confirms that Plaintiffs are not "proper parties to bring this antitrust action," *Eagle*, 812 F.2d at 543.

**II.    Plaintiffs' Amendments Do Not Address the Other Deficiencies in Their Claims**

Just as before, Plaintiffs seek to assert a "tying" claim under Section 1 of the Sherman Act. (¶¶ 186–196). But by their own account, the harm they assert results not from a contractual tie, but the manner in which Amazon supposedly designed its algorithm. (*E.g.*, ¶ 24). The so-called "tying product," the Featured Offer or "Buy Box" (¶ 188), is no product at all: It is not available for purchase or sale. Nor do Plaintiffs properly define an antitrust market in which the Featured Offer competes. Their attempt to describe such a market—"favorable product placement on Amazon's website, and on the internet more broadly" (¶ 188(i))—does not provide even the rough contours of an antitrust market, nor does it provide any notice as to which products it includes and excludes.

Amazon explained these deficiencies in its first motion to dismiss. Despite having the benefit of that briefing, Plaintiffs chose to stand on their deficient allegations. If the Court reaches the sufficiency of Plaintiffs' claims, it should dismiss them.

**A.    Plaintiffs fail to plead a Section 1 tying claim.**

Tying arrangements are not automatically unlawful; they are often procompetitive. *See Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 36 (2006); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1201 (9th Cir. 2012). Accordingly, a plaintiff must plead facts to show: (1) a tie between two separate products, (2) sufficient economic power in the tying product market and the coercion of customers into purchasing the tied product, and (3) sufficient anticompetitive effects in the tied product market. *Qualcomm*, 969 F.3d at 991; *Brantley*, 675 F.3d at 1197 n.7; *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1112 (9th Cir. 2021). The

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 12

Second Amended Complaint's allegations are insufficient as a matter of law to satisfy any of these three elements.

### 1.    Plaintiffs do not allege a legally cognizable tie.

A tying claim requires a tie between two distinct products. *See, e.g.*, *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11–12 (1984); *Brantley,* 675 F.3d at 1197 n.7; *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 252 (3d Cir. 2022). The Featured Offer is not a product at all; it is not for sale. And shipping times and reliability, such as those that result from using FBA or other logistics providers, are inputs into the Featured Offer algorithm. (¶¶ 24, 72).

But even if the Featured Offer and FBA were distinct products, Plaintiffs fail to allege a cognizable tie between them. At best, the "Buy Box" is a feature on the website—an aspect of technological product design. (¶ 24 ("Amazon has forced Sellers to buy its Fulfillment services by *designing* its Buy Box algorithm"); ¶ 130 ("Amazon has intentionally *designed* its algorithm"); ¶ 131 ("Amazon's *design* of the Buy Box algorithm")). But product design decisions cannot serve as the basis for a tying claim under Section 1 of the Sherman Act, which requires that the defendant entered into a "contract," "trust," or "conspiracy" in restraint of trade. 15 U.S.C. § 1; Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1757a (5th ed. 2021) ("[T]he challenged product design is ordinarily a unilateral act, thus not satisfying Sherman § 1 or Clayton § 3's requirement of an agreement.").

Plaintiffs assert that Amazon's conduct is a *per se* violation of Section 1. (¶¶ 44, 187). But *per se* liability is patently inappropriate for a so-called "technological tie," in which the "tied" products work together as an integrated whole. *See Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 997 (9th Cir. 2023) (rejecting *per se* treatment where "tied good [was] technologically integrated with the tying good" (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 90 (D.C. Cir. 2001))[7]; *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 542 (9th Cir. 1983)

---

[7] Although *Epic Games* held that an arrangement in which the "tied good [was] technologically integrated with the tying good" could be found anticompetitive under the rule of reason, 67 F.4th at 997–98, Apple there had compelled Epic Games to enter into a contract that effectuated the tying agreement, *id.* at 968,

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

("Product innovation . . . is in many cases the essence of competitive conduct. Therefore, we decline to place such technological ties in the category of economic restrictions deemed *per se* unlawful."); *see also Apple iPod iTunes Antitrust Litig.*, 2009 WL 10678940, at *5–6 (N.D. Cal. Oct. 30, 2009) (rejecting technological tying claim under rule of reason). This is especially true when it comes to the manner in which Amazon designs its Featured Offer algorithm, because "novel business practices—***especially*** in technology markets—should not be conclusively presumed to be unreasonable and therefore illegal." *Qualcomm*, 969 F.3d at 990 (emphasis in original); *cf. United States v. Microsoft Corp.*, 147 F.3d 935, 948 (D.C. Cir. 1998) ("Antitrust scholars have long recognized the undesirability of having courts oversee product design, and any dampening of technological innovation would be at cross-purposes with antitrust law.").

Here, any alleged relationship between the Featured Offer algorithm and FBA is a product design decision not actionable under Section 1. *See It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 689 (4th Cir. 2016) ("With advances in modern technology comes even greater potential for efficient integration, increased compatibility among products, and ties that are technological as much as or more than contractual. It would be unfortunate if an overly aggressive tying doctrine were to impede that innovation."). Amazon identified these shortcomings in its first motion to dismiss (Dkt. 26, at 23–24; Dkt. 38, at 13–14), but Plaintiffs add no allegation to the Second Amended Complaint that Amazon tied the Featured Offer and FBA through use of a contract, trust, or conspiracy. The Second Amended Complaint, like the First Amended Complaint, does not allege a cognizable tie.

### 2. Plaintiffs fail to allege a proper tying product market, that Amazon has market power in such a market, or that any purchaser was "coerced" into purchasing the tied product.

Plaintiffs' failure to describe a plausible tying product market in which the "Buy Box" might compete, and the attendant failure to allege Amazon has market power in such a market, is also fatal to their tying claim. Plaintiffs made no effort to sharpen their alleged tying product

---

982. Here, Plaintiffs allege Amazon created the "tie" solely through unilateral design of its Featured Offer algorithm. (¶ 26). That is not a contract, trust, or conspiracy actionable under Section 1.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

market in their Second Amended Complaint and continue to assert a puzzling market of "favorable product placement on Amazon's website, and on the internet more broadly." (¶ 188(i)). Despite having the opportunity to amend, they still do not explain what "favorable product placement" is, much less how it applies to "Amazon's website" or "the internet more broadly." To the extent the definition is meant to apply only to Amazon, it would be an implausible single-brand market.[8] Concerning "the internet more broadly," Plaintiffs fail to explain, for example, whether "favorable product placement" includes banner ads on prominent websites, in-stream ads before YouTube videos, or sponsored articles featuring a product, nor do they suggest Amazon has market power over such potential substitutes.

The vague language of the Second Amended Complaint comes nowhere close to defining a relevant antitrust market or power within that market. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120–21 (9th Cir. 2018) (proposed market definition must "encompass the product at issue as well as all economic substitutes for the product," rather than being "artificial" or "contorted to meet [plaintiffs'] litigation needs"). In prior briefing, Plaintiffs wondered aloud whether "the online retail market in the United States" might be a relevant tying-product market. (Dkt. 35, at 16.) Evidently they have since thought better of the idea: The Second Amended Complaint includes no such allegations. Instead, Plaintiffs retain the First Amended Complaint's ill-defined tying "market." (*See* ¶¶ 188–189, 194–195 (continuing to allege market for "favorable product placement")).

Plaintiffs' failure to define their purported "market" in even rough contours, much less by reference to reasonable substitutes, cross-elasticity of demand, or any other recognized means of identifying the contours of an antitrust market, is fatal. *Hicks*, 897 F.3d at 1120–21 (market

---

[8] In general, a seller's "own products do not themselves comprise a relevant product market," and "a company does not violate the Sherman Act by virtue of the natural monopoly it holds over its own product." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008). As Amazon explained in its first motion to dismiss, single-brand markets are viable only "in the context of *aftermarkets* which are wholly derivative from and dependent on the primary market." (Dkt. 38, at 9 (quoting *Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, 1107 (N.D. Cal. 2022)). Yet Plaintiffs still do not allege (nor could they allege) the "Buy Box" is such an aftermarket.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

cannot inexplicably "omit many economic substitutes"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436, 442–43 & n.18 (3d Cir. 1997) (rejecting tying claim for failure to plead product market based on "reasonable interchangeability and cross-elasticity of demand"). Such an artificially narrow definition is particularly problematic in the context of emerging technologies. *See Reilly v. Apple Inc.*, 578 F.Supp.3d 1098, at 1107–09 (N.D. Cal. 2022) (dismissing tying claim where plaintiff failed to explain why proposed market for distribution of mobile applications included Apple's App Store but excluded Google Play store); *In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990, at *3 (N.D. Cal. May 13, 2021) (rejecting proposed definition of online advertising market that excluded providers other than Google). Plaintiffs' market definition remains "facially unsustainable" and, having failed even to attempt to improve on these deficiencies following Amazon's motion to dismiss, their claim must be dismissed with prejudice. *Hicks*, 897 F.3d at 1120.

And even had Plaintiffs alleged a plausible market definition, they would be unable to show the coercion required for a tying claim. *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (tying claim requires "proof that the seller coerced a buyer to purchase the tied product"). Plaintiffs assert that sellers were coerced into purchasing FBA (¶¶ 89, 130, 190), without providing any evidence of a contractual requirement or condition requiring sellers to do so. To the contrary, Plaintiffs admit sellers are not required to use FBA—and do not always choose to do so. (¶¶ 30, 41, 91). *See Cherrone* v. *Florsheim Dev.*, 2012 WL 6049021, at *5 (E.D. Cal. Dec. 5, 2012) (dismissing tying claim where plaintiff offered only "broad and conclusory statements" but made "no allegations as to ***how*** defendants 'steered' or 'mandated'" purchase of tied product); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178–80 (9th Cir. 2016) ("implied tie" not viable where "chain of logic and evidence is too attenuated"). As they did in their First Amended Complaint, Plaintiffs continue to claim 73% of sellers use FBA—apparently suggesting that a tie can be inferred. (¶¶ 41, 89, 131–132). But Plaintiffs still do not allege these 73% of sellers use FBA to the exclusion of other logistics providers, nor do they account for the fact that a great many sellers (over 25%, even accepting

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' figure) continue to do business on Amazon without using FBA at all, further underscoring that the implied tie they assert is far "too attenuated" to survive 12(b)(6) scrutiny. *Aerotec*, 836 F.3d at 1179–80.

### 3. Plaintiffs fail to show sufficient anticompetitive effects in the tied product market.

Plaintiffs also do not plead sufficient anticompetitive effects in logistics/fulfillment (the putative tied product market) under either a *per se* or rule-of-reason theory (¶¶ 187, 192). *See State Oil Co. v. Khan*, 522 U.S. 3, 3 (1997) (requiring "predictable and pernicious" anticompetitive effect under *per se* standard); *Jefferson Par.*, 466 U.S. at 31 (mandating that plaintiffs show "actual adverse effect" on competition under rule-of-reason theory). They make no meaningful effort to show the "types of injuries to competition that are typically alleged to flow from tying arrangements," such as raising barriers to entry or causing customers to forgo the purchase of substitutes for the tied product. *See, e.g.*, *Brantley*, 675 F.3d at 1201. Plaintiffs do not attempt to allege that shipping costs have gone up, that delivery times have gotten worse, that the quality of customer service has declined, or any of the other anticompetitive effects that would be necessary. They instead claim, with no factual support, that Amazon's conduct "has decreased competition in the logistics market (the tied product market) and has put numerous competitors in that market out of business." (¶ 191).[9] This conclusory assertion of harm to competition does not come close to satisfying Plaintiffs' burden. *Rick-Mik Enters.*, 532 F.3d at 973 (conclusory allegation lacked "factual specificity required" to survive motion to dismiss); *AFMS, LLC v. UPS Co.*, 2011 WL 13128436, at *16 (C.D. Cal. Nov. 23, 2011) ("Without facts regarding the actual impact of defendants' policies on the relevant market . . . the complaint fails to plead an essential element of a [Section 1] claim."). Plaintiffs' failure to allege **_facts_**, and instead to rely on *ipse dixit*, is particularly glaring in view of the prior briefing identifying these

---

[9] Plaintiffs suggest that Amazon's outperformance of USPS somehow shows anticompetitive conduct. (¶ 193). But allegations that a defendant may have outcompeted a third party does not show the "actual adverse effect" required for a claim to survive. *See Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 744 (9th Cir. 1979).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

same defects, which remain unimproved in the Second Amended Complaint. If Plaintiffs had facts they could plausibly allege regarding anticompetitive effects in the logistics/fulfillment market, the time to plead them has come and gone.

### B.     Plaintiffs fail to plead a monopolization claim under Section 2.

In allegations that are also unchanged from the First Amended Complaint, Plaintiffs recast their Section 1 claim as a Section 2 "monopoly leverag[ing]" claim. (¶¶ 197–208). "The offense of monopoly under Section 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *see also Qualcomm*, 969 F.3d at 990. Plaintiffs fail to plead either element because they allege mere "monopoly leveraging," which is not anticompetitive conduct, and because they do not (and cannot) show monopoly power in the relevant market of logistics and fulfillment. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547–48 (9th Cir. 1991); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1209 (9th Cir. 1997). Plaintiffs spill much ink about Amazon's supposed monopoly power in the alleged "e-commerce market" (*e.g.*, ¶ 199), but the relevant market here is the one they claim Amazon is monopolizing—the fulfillment and logistics market (¶ 202)—where Plaintiffs concede Amazon possesses a mere 20% share. (¶ 207). Plaintiffs' failure to allege either element of a Section 2 claim provides yet another independent ground for dismissal.

### 1.     Plaintiffs do not allege actionable anticompetitive conduct.

Plaintiffs' Section 2 claim fails because they allege only "monopoly leveraging," (¶¶ 197–208), which by itself is, as a matter of law, not anticompetitive. *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004). This Circuit does not recognize a theory of monopoly leveraging where a firm uses "its monopoly power in one market" to "gain a competitive advantage in another." *Image Tech. Servs., Inc.*, 125 F.3d at 1209; *see Alaska Airlines*, 948 F.2d at 546–48; *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

F.3d 937, 951–52 (9th Cir. 1996). Thus, to sustain their Section 2 claim, Plaintiffs must allege that Amazon engaged not only in leveraging, but also in conduct that courts actually recognize as anticompetitive. *Doe I v. Abbott Labs.*, 571 F.3d 930, 931 (9th Cir. 2009). Here, Plaintiffs' sole theory of anticompetitive conduct turns on the alleged tie between the Featured Offer and FBA. (¶ 203). But, as explained in section II.A, *supra*, Plaintiffs cannot show such a tying arrangement as a matter of law. *Foremost Pro Color, Inc.*, 703 F.2d at 544 ("[T]he introduction of technologically related products . . . is alone neither a predatory nor anticompetitive act."). And if Plaintiffs fail to plead anticompetitive conduct under Section 1, they certainly cannot satisfy the "more exacting" standard of Section 2 based on the same factual allegations. *Qualcomm*, 969 F.3d at 991–92 ("If, in reviewing an alleged Sherman Act violation, a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2."); *see also* Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 776 (5th ed. 2021) (product design decisions "never violate § 2"). Courts do not permit plaintiffs to repackage meritless tying theories under the guise of "monopoly leveraging." *See, e.g.*, *Dream Big Media Inc. v. Alphabet Inc.*, 2022 WL 16579322, at *6 (N.D. Cal. Nov. 1, 2022). Plaintiffs' failure to allege any actionable anticompetitive conduct merits dismissal with prejudice.

### 2. Plaintiffs fail to allege monopoly power in the relevant market.

Even if Plaintiffs could plead anticompetitive conduct, their inability to allege monopoly power—or anything approaching it—in the logistics market is fatal to their claim. "[A] market share of less than 50 percent is presumptively insufficient to establish market power" for monopolization. *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995). Thus, to plead a Section 2 claim, Plaintiffs must show (among other things) at least a 50% share in the market they claim Amazon monopolized: logistics and fulfillment.[10] Even accepting

---

[10] Although Plaintiffs go on at length regarding Amazon's supposed share of the e-commerce market, that is not the relevant market for their Section 2 claim. As noted in *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992)—a case Plaintiffs themselves cited in the Amended Complaint and retain in the Second Amended Complaint (¶ 198 n.153)—Plaintiffs must show power in the market targeted by the alleged "monopoly leveraging." In this case, that market is logistics and fulfillment (¶ 202).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' naked assertions as true, Amazon would possess a share of just "one fifth" (20%) of the logistics market. (¶¶ 193, 207). This concession dooms their Section 2 claim.

### C.      Most of Plaintiffs' claims are time-barred.

Plaintiffs seek treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15(a). (¶ 209). Those claims are "barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Plaintiffs commenced this action on July 26, 2021. (Dkt. 1). Claims that accrued before July 26, 2017 are therefore time-barred. Plaintiffs nevertheless seek a class period that would begin on January 1, 2013 (¶ 165), which includes claims for roughly four-and-a-half years' worth of purchases that Plaintiffs cannot pursue, as a matter of law. Even if Plaintiffs' claims were otherwise viable (and they are not), the Court should dismiss these time-barred claims.

### 1.      Plaintiffs' claims accrued when their alleged injuries occurred, not when they allegedly "discovered" their claims.

Clayton Act claims are subject to a "pure injury accrual rule," meaning that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997). Thus, a plaintiff need not "actually discover its antitrust claims before the statute of limitations begins to run." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); *accord In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015). Plaintiffs nevertheless assert that a "discovery rule" tolled the statute of limitations until November 8, 2019, when major news outlets reported a seller's accusations that FBA was requiring sellers to raise prices. (¶ 176). Before this reporting, Plaintiffs assert, "neither Plaintiffs nor other consumers had any reason to read articles about winning Amazon's Buy Box." (¶ 177). The premise of this argument is contrary to black-letter law: Nothing requires that plaintiffs "knew or should have known" of their causes of action before the Clayton Act's limitations period began to run. *Klehr*, 521 U.S. at 186, 188; *Hexcel Corp.*, 681 F.3d at 1060, 1062.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

2.      **Plaintiffs fail to plead any of the necessary elements for fraudulent concealment tolling.**

As a fallback, Plaintiffs suggest that Amazon "fraudulently concealed" its practices related to FBA by sending annual letters to shareholders (not purchasers) stating that Amazon was committed to low prices. (¶¶ 181–185). This falls far short of what is required for fraudulent concealment tolling of the statute of limitations: A plaintiff must plead with particularity "facts showing that the defendant affirmatively misled it, and that the plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Hexcel Corp.*, 681 F.3d at 1060 (emphasis omitted).

Despite the opportunity to amend their complaint, Plaintiffs still allege no connection between Amazon's public statements and their failure to investigate their claims. They do not allege they were aware of or relied on Amazon's annual letters to shareholders. Nor could they: Not one of these statements even involves the "Buy Box" that forms the basis of Plaintiffs' claims. The implication—that any company generally touting "low prices" is engaged in fraudulent concealment of conduct that allegedly produced supracompetitive prices—would effectively repeal the Clayton Act's statute of limitations.

Further, Plaintiffs' allegations display screenshots from Amazon's website showing instances in which the offer featured in the "Buy Box" was ***not*** the lowest-priced offer. (¶¶ 9, 125, 127). It is thus not remotely plausible that Amazon's generic statements about its commitment to low prices fraudulently misrepresented the contents of the "Buy Box" or actively concealed the workings of the Featured Offer. *Cf. In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) (statements regarding data security and user privacy were "vague and generalized corporate commitments, aspirations, or puffery" insufficient for securities fraud claim); *Reveal Chat HoldCo LLC v. Meta Platforms, Inc.*, 2022 WL 595696, at *2 (9th Cir. Feb. 28, 2022) (no fraudulent concealment tolling based on conclusory allegations challenging scope of defendant's public disclosures). In fact, the Second Amended Complaint cites sources published from 2013 through 2016 that disclosed the basic arrangements Plaintiffs challenge. (¶¶ 88, 122). Plaintiffs' purported lack of granular awareness regarding the workings of the "Buy

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS THE SAC (2:21-cv-00996 RSM) – 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Box" and FBA does not reflect any concealment by Amazon. Rather, it reinforces that Plaintiffs were not purchasers of FBA and are improper parties to raise claims about conduct that—even taking Plaintiffs' allegations as true—directly affected only sellers.

Nor do Plaintiffs allege any diligent investigation of their claims, without which they are barred as a matter of law from asserting fraudulent concealment. *See Reveal Chat HoldCo, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (where publicly available facts would have led reasonable person to inquire, failure to plead diligent investigation defeated fraudulent concealment argument). Plaintiffs' deficient fraudulent concealment allegations do not rescue their out-of-time claims.

## III.   Further Amendment Would Be Futile

Having had a chance to amend, Plaintiffs made only legally irrelevant additions that cure neither the defect that the Court relied upon in its prior dismissal, nor the many other deficiencies in Plaintiffs' claims. Accordingly, any future amendment would be futile, and dismissal should be with prejudice. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1143 (9th Cir. 2022). This is so regardless whether the Court dismisses for lack of antitrust standing, as it did before, or for failure to state a claim because, as described above, Plaintiffs have failed to cure fatal defects identified in the prior round of motion to dismiss briefing.

## CONCLUSION

For the foregoing reasons, the Court should grant Amazon's motion and dismiss the Second Amended Complaint with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 21st day of August, 2023.

2                                    Davis Wright Tremaine LLP

3
                                     By  */s/ Stephen M. Rummage*
4                                        Stephen M. Rummage, WSBA #11168
                                         MaryAnn Almeida, WSBA #49086
5                                        Adam Sieff, *pro hac vice*
                                         920 Fifth Avenue, Suite 3300
6                                        Seattle, WA  98104-1610
                                         Telephone: 206.622.1350
7                                        Fax: 206.757.7700
                                         Email: steverummage@dwt.com
8                                        Email: maryannalmeida@dwt.com
                                         Email: adamsieff@dwt.com
9

10

11                                   By  */s/ John Schmidtlein*
                                         John Schmidtlein*
12                                       Jonathan B. Pitt*
                                         Alexander G. Peerman*
13                                       WILLIAMS & CONNOLLY LLP
                                         680 Maine Avenue, S.W.
14                                       Washington, DC 20024
                                         (202) 434-5000
15                                       Email: jschmidtlein@wc.com
                                         Email: jpitt@wc.com
16                                       Email: apeerman@wc.com

17                                       * *pro hac vice*

18                                   Attorneys for Amazon.com, Inc.

19

20

21                       CERTIFICATE OF LENGTH

22        I certify that this memorandum complies with the word count limit set forth LCR 7(e)

23   because it contains 8,327 words. In preparing this certification, I have relied on the word count of

24   the word-processing system used to prepare this memorandum of law.

25
                                         */s/ Stephen M. Rummage*
26                                       Stephen M. Rummage

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax